**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
-----------------------------------------------------x

SAKUNTHALA THALAHITIYA
VITHANALAGE

                    Plaintiff,

v.                                              Civ. Action No.: 3:22-cv-06248 (KMW/SAK)

ALIA AL HUNAITY
and IMAD QATARNEH

                    Defendants.

-----------------------------------------------------x


## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL DISCOVERY FROM THE UNITED STATES DEPARTMENT OF HOMELAND SECURITY

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

BACKGROUND ........................................................................................................... 2

    A.    Summary Of This Action ............................................................................ 2

    B.    DHS's Critical Role In This Action ........................................................... 3

    C.    Ms. Vithanalage's *Touhy* Request And The DHS's Denial Letter ........... 4

LEGAL STANDARDS .................................................................................................. 6

ARGUMENT .................................................................................................................. 7

I.      The DHS's Relevance Objection Is Arbitrary And Capricious ......................... 9

II.    The DHS's Overbreadth and Undue Burden Objections Are Arbitrary And Capricious ....................................................................................................... 12

III.   The DHS's Availability Objection Is Arbitrary And Capricious.................... 14

IV.   The DHS's Privilege Objections Are Arbitrary And Capricious.................... 15

V.    The DHS's Objections Fail To Establish Undue Burden Under FED. R. CIV. P. 37 And 45 ....................................................................................................... 16

VI.   The DHS Has A Significant Interest In The Outcome Of The Instant Litigation .......... 17

CONCLUSION ............................................................................................................. 17

CERTIFICATE OF SERVICE .................................................................................... 18

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re 3M Combat Arms Earplug Prod. Liab. Litig.*,
    2020 WL 6065076 (D. N.D. Fl. Oct. 14, 2020) ...................................................................13

*Burgess v. Galloway, et al.*,
    No. 20-06744 (FLW) (DEA), 2021 WL 2661290 (D.N.J. Jan. 28, 2021) .............................17

*Ca. State Teachers Retirement Sys. v. Novo Nordisk, Inc.*,
    No. 19-16458 (FLW) (DEA), 2020 WL 6336199 (D.N.J. Oct. 29, 2020) .............................17

*Cognizant Tech. Sols. Corp. v. United States Citizenship & Immigr. Servs.*,
    No. 23-3386 (PGS) (RLS), 2024 WL 2091281 (D.N.J. May 8, 2024)...................................16

*Cognizant Tech. Sols. Corp. v. United States I.R.S.*,
    No. 23-3320 (PGS) (RLS), 2024 WL 2091284 (D.N.J. May 9, 2024).......................... *passim*

*Doe v. Howard*,
    2012 WL 3834867 (E.D. Va. Sept. 4, 2012)..........................................................................11

*EEOC v. Princeton Healthcare System*,
    No. 10-4126 (PGS), 2012 WL 1623870 (D.N.J. May 9, 2012)...............................................7

*Fairholme Funds, Inc. v. Federal Housing Finance Agency*,
    2019 WL 5864595 (D.D.C. Nov. 8, 2019) ......................................................................13, 17

*Kiwanuka v. Bakilana*,
    844 F. Supp. 2d 107 (D.D.C. 2012) ................................................................................11, 12

*Muchira v. Al Rawaf*,
    850 F.3d 605 (4th Cir. 2017) ...............................................................................................11

*In re Novo Nordisk Sec. Litig.*,
    530 F.Supp.3d 495 (D.N.J. 2021) ...........................................................................................8

*Oppenheimer Fund, Inc. v. Sanders*,
    437 U.S. 340 (1978)...............................................................................................................7

*Redland Soccer Club, Inc. v. Dep't of Army of U.S.*,
    55 F.3d 827 (3d Cir. 1995)...................................................................................................13

*United States ex rel. Touhy v. Ragen*,
    340 U.S. 462 (1951).................................................................................................... *passim*

*United States v. Al Hunaity,*
   No. 1:18-CR-00723-RBK-1 (D.N.J. Mar. 11, 2020), ECF No. 75 .................................2, 4, 13

*United States v. Callahan,*
   801 F.3d 606 (6th Cir. 2015) .................................................................................................11

*Franchitti ex rel. United States v. Cognizant Tech. Sols. Corp.,*
   No. 17-6317 (PGS) (RLS), 2023 WL 2759075 (D.N.J. Apr. 3, 2023)
   .........................................................................................................................9, 14, 16, 17

*United States v. Dann,*
   652 F.3d 1160 (9th Cir. 2011) ...............................................................................................11

**Statutes**

18 U.S.C. § 1589 ........................................................................................................................11

18 U.S.C. § 1589(a) ...............................................................................................................4, 11

18 U.S.C. § 1589(b) ...................................................................................................................11

18 U.S.C. § 1592(a) ...................................................................................................................12

18 U.S.C. §§ 1589(a), 1590(a), 1592(s) ....................................................................................12

5 U.S.C. § 301 .............................................................................................................................7

5 U.S.C. § 706(2)(A) ...................................................................................................................8

5 U.S.C. §§ 702-706 ....................................................................................................................8

8 U.S.C. § 1325(c) .......................................................................................................................4

8 U.S.C. §§ 1324(a)(1)(A)(iii) and 1324(a)(1)(B)(i) .................................................................4

N.J.S.A. § 25:2-25 (a) .................................................................................................................4

N.J.S.A., 34:11-56a. ..................................................................................................................11

State Wage and Hour Law ...........................................................................................................4

Trafficking Victims Protection Reauthorization Act ..................................................2, 3, 4, 10, 12

**Other Authorities**

6 C.F.R. ........................................................................................................................................7

6 C.F.R. § 5.3(b) ...................................................................................................................12, 13

6 C.F.R. § 5.41-5.49 .................................................................................................7

6 C.F.R. § 5.45 .......................................................................................................9

6 C.F.R. § 5.48(a)(1) ............................................................................................14

6 C.F.R. § 5.48(a)(2) ............................................................................................16

6 C.F.R. §§ 5.41–5.49 .........................................................................................2, 5

Fed. R. Civ. P. 26(b)(1) ..........................................................................................7

Fed. R. Civ. P. 37 ..............................................................................................8, 16

Fed. R. Civ. P. 37(a) .........................................................................................8, 16

Fed. R. Civ. P. 45 ..........................................................................................*passim*

Fed. R. Civ. P. 45(d)(2)(B)(i) .................................................................................8

## INTRODUCTION

Plaintiff Sakunthala Thalahitiya Vithanalage commenced this lawsuit under the Trafficking Victims Protection Reauthorization Act ("TVPRA") and New Jersey state law to recover damages suffered as a result of being the victim of human trafficking by Defendant Alia Al Hunaity and Defendant Imad Qatarneh.  Specifically, Defendants forced and compelled Ms. Vithanalage to perform housekeeping and caretaking services, without pay, for nearly a decade. Defendant Al Hunaity was arrested, tried, and convicted for his role in this illegal scheme.[1]

The U.S. Department of Homeland Security ("DHS") is well familiar with Defendants' unlawful actions, having investigated, arrested, and assisted in the criminal prosecution of Defendant Al Hunaity for precisely these crimes.  Documents and testimony from the DHS are undeniably relevant to the present case.  For this reason, Ms. Vithanalage submitted requests for testimony and documents pursuant to the DHS's *Touhy* regulations, 6 C.F.R. §§ 5.41–5.49, (the "*Touhy* Request"), which set forth, in detail, the nature and relevance of (i) the testimony of DHS Special Agents Bradley Benwell and Ronald Conyers, both of whom investigated Ms. Vithanalage's forced labor and testified in Defendant Al Hunaity's criminal trial, and (ii) the documents, communications, and other materials collected during the course of the DHS's investigation which directly relate to Ms. Vithanalage's instant claims of forced labor.[2]

In response, the DHS issued a blanket denial, citing, without explanation, concerns of overbreadth, undue burden, irrelevance, and privilege (the "DHS Denial Letter").[3]  As demonstrated below, the DHS's objections to Ms. Vithanalage's *Touhy* Request are unsupported

---

[1]     *United States v. Al Hunaity*, No. 1:18-CR-00723-RBK-1, (D.N.J. Mar. 11, 2020), ECF No. 75.

[2]     *See* Declaration of David A. Kotler ("Kotler Decl.") Exhibit ("Exh.") A.

[3]     *See* Kotler Decl. Exh. B.  The U.S. Immigration and Customs Enforcement ("ICE") submitted the DHS Denial Letter on behalf of the DHS.  For the purposes of this Memorandum, Plaintiff will refer solely to the DHS.

and unavailing. In light of the specific facts underlying Ms. Vithanalage's claims—and the elements necessary to prove those claims—her requests seeking evidence of the labor she performed, her living conditions, her possessions, and her immigration status, along with communications between and among Ms. Vithanalage and Defendants, are relevant and essential to the instant action. Having failed to justify its conclusory objections to Ms. Vithanalage's discovery requests, the DHS's denial cannot stand.

Ms. Vithanalage therefore respectfully requests that this Court compel the DHS to produce all testimony and documents responsive to her *Touhy* Request.

## **BACKGROUND**

### A.    **Summary Of This Action**

In the instant litigation, Ms. Vithanalage seeks redress under the Trafficking Victims Protection Reauthorization Act ("TVPRA") and New Jersey state laws.[4] In 2009, Defendants Qatarneh and Al Hunaity lured Ms. Vithanalage to the United States with false promises of paid labor and free education.[5] For the next ten years, Defendants forced Ms. Vithanalage to serve as a housekeeper and caretaker, without pay, by means of threats and other forms of abuse.[6] On August 24, 2018, the DHS received an anonymous tip concerning Ms. Vithanalage's forced labor.[7] Ms. Vithanalage finally escaped on September 18, 2021, when law enforcement executed a search warrant and placed Defendant Al Hunaity under arrest.[8]

---

[4]    Am. Compl. ¶¶ 38–99, ECF No. 65.

[5]    *Id.* ¶¶ 13-15.

[6]    *Id.* ¶¶ 16-26.

[7]    *Id.* ¶ 29.

[8]    *Id.* ¶ 30.

On May 9, 2019, a jury convicted Defendant Al Hunaity of: (1) marriage fraud in violation of 8 U.S.C. § 1325(c); (2) harboring an illegal alien for private financial gain in violation of 8 U.S.C. §§ 1324(a)(1)(A)(iii) and 1324(a)(1)(B)(i); and (3) forced labor in violation of 18 U.S.C. § 1589(a).[9] Defendant Al Hunaity was sentenced to imprisonment for a term of sixty months on the first count and terms of seventy months on each the second and third counts, all to be served concurrently. Defendant Al Hunaity also was sentenced to three years of supervised release for each of the three counts and ordered to pay $1,200,208.00 in criminal restitution. Defendant Qatarneh has not faced any criminal accountability for enslaving Ms. Vithanalage.

On October 24, 2022, Ms. Vithanalage commenced this action against Defendant Qatarneh and Defendant Al Hunaity, asserting, among other things, claims of forced labor under the TVPRA and violations of the New Jersey State Wage and Hour Law.[10] On February 28, 2024, Ms. Vithanalage amended her complaint to assert an additional claim pursuant to the New Jersey Uniform Fraudulent Transfer Act, N.J.S.A. § 25:2-25 (a).[11] The pretrial fact discovery in this case began in February 2023 and is set to conclude on July 31, 2024.[12]

**B.    DHS's Critical Role In This Action**

The DHS, through Special Agents Bradley Benwell and Ronald Conyers, conducted an investigation that culminated in the arrest and conviction of Defendant Al Hunaity. Special Agents Benwell and Conyers were deeply involved in the investigation of Ms. Vithanalage's forced labor, pursuant to which they collected evidence, interviewed witnesses, and executed the ultimate search

---

[9]    *United States v. Al Hunaity*, No. 1:18-CR-00723-RBK-1, (D.N.J. Mar. 11, 2020), ECF No. 75.

[10]    *Id.*, ECF No. 1.

[11]    *Id.*, ECF No. 65.

[12]    *See* Scheduling Order, ECF No. 25; Am. Scheduling Order, ECF No. 81.

and arrest warrants.[13]  Furthermore, both agents provided key testimony at Defendant Al Hunaity's criminal trial.[14]  Throughout the investigation, Ms. Vithanalage provided her full assistance to the Government, including by providing information, testifying at trial, and later appearing in Court through counsel to support the Government's applications concerning Defendant Al Hunaity's incarceration.

### C.    Ms. Vithanalage's *Touhy* Request And The DHS's Denial Letter

On February 7, 2024, Ms. Vithanalage served upon the DHS Office of the General Counsel a request for certain testimony and documents pursuant to the procedures set forth in *United States ex rel. Touhy v. Ragen* and DHS's *Touhy* regulations.[15]  Ms. Vithanalage requested the deposition and trial testimony of Special Agents Benwell and Conyers regarding:

1.    Defendant Al Hunaity's arrest;

2.    Defendant Al Hunaity's dwelling;

3.    Ms. Vithanalage's living conditions from approximately 2009 to 2018;

4.    Ms. Vithanalage's possessions in Defendant Al Hunaity's home;

5.    The labor that Ms. Vithanalage performed at Defendant Al Hunaity's or Defendant Qatarneh's direction and in Defendant Al Hunaity's or Defendant Qatarneh's dwellings;

6.    Defendant Al Hunaity's communications with, and concerning, Ms. Vithanalage;

7.    Defendant Qatarneh's communications with, and concerning, Ms. Vithanalage;

8.    The Special Agents' observations regarding, and interactions with, Ms. Vithanalage; and

9.    Ms. Vithanalage's immigration status.[16]

---

[13]    *See generally* Kotler Decl. Exhs. C, D, and E.

[14]    *Id.*

[15]    *See* 340 U.S. 462 (1951); 6 C.F.R. §§ 5.41–5.49.

[16]    Kotler Decl. Exh. A at 2-3.

In addition, Ms. Vithanalage sought three categories of documents:

1. All documents, communications, and other materials collected from Defendants Al Hunaity and Qatarneh in the course of the Government's investigation;

2. All documents, communications, and other materials concerning Defendant Al Hunaity, Defendant Qatarneh, and Ms. Vithanalage, respectively, including documents and communications concerning any interactions, observations, conversations, interviews, searches, or impressions of each individual; and

3. Copies of any documents either (a) seized from Defendant Al Hunaity, Defendant Qatarneh, Ms. Vithanalage, or any other party in connection with this matter, or (b) used at Defendant Al Hunaity's criminal trial.[17]

Ms. Vithanalage's *Touhy* Request further explained why this discovery is critical to her action against Defendants Qatarneh and Al Hunaity and why the materials are otherwise unobtainable. Specifically, she summarized the core facts underlying her claims—that Defendants lured Ms. Vithanalage to the United States with the promise of paid labor and free education, and instead enslaved her for nearly a decade.[18] She explained that the testimony and documents sought were directly relevant to her allegations of forced labor against Defendant Qatarneh, "whose conduct and efforts to enslave Ms. Vithanalage were intimately intertwined with those of Defendant Al Hunaity."[19] Finally, Ms. Vithanalage explained that her *Touhy* Request was likely her only recourse, as the requested testimony and documents likely would not be available from either Defendant Al Hunaity or Defendant Qatarneh.[20] Document discovery from Defendants aligned with these expectations, and Ms. Vithanalage has not received any of the materials she requested in her *Touhy* Request from either Defendant.

---

[17] *Id.* at 3.

[18] *Id.* at 1-2.

[19] *Id.* at 3.

[20] *Id.*

On March 4, 2024, the DHS sent the DHS Denial Letter, denying Ms. Vithanalage's *Touhy* Request on the purported grounds that the requests were overly broad, unduly burdensome, not relevant to the present civil matter, likely obtainable from or already in the possession of the parties, and/or sought privileged information.[21]  The DHS Denial Letter did not provide any detail to support these blanket assertions.

## LEGAL STANDARDS

In general, parties may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."[22]  Courts construe relevance "broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."[23]  The party seeking discovery bears the burden of showing the information sought is relevant.[24]

Under the Federal Housekeeping Statute, federal agencies "may prescribe regulations for . . . the custody, use, and preservation of its records, papers, and property."[25]  Pursuant to *United States ex rel. Touhy v. Ragen*[26] and its progeny, many agencies, including the DHS, have adopted regulations setting forth the procedure by which agency employees respond to third-party requests for information.  Title 6 of the Code of Federal Regulations sets forth the DHS's *Touhy* regulations.[27]  Pursuant to those regulations, a party seeking the release of official information from the DHS must "set forth in writing, and with as much specificity as possible, the nature and

---

[21]     *See* Kotler Decl. Exh. B.

[22]     Fed. R. Civ. P. 26(b)(1).

[23]     *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

[24]     *EEOC v. Princeton Healthcare System*, No. 10-4126 (PGS), 2012 WL 1623870, at *19 (D.N.J. May 9, 2012).

[25]     5 U.S.C. § 301.

[26]     340 U.S. 462 (1951).

[27]     *See* 6 C.F.R. § 5.41-5.49.

relevance of the official information sought" and "must describe the records sought in sufficient detail to enable DHS personnel to locate them with a reasonable amount of effort."[28]

Upon an agency's denial of a *Touhy* request, the requesting party may seek judicial intervention. Circuits are split, however, on whether to evaluate the agency's denial under the arbitrary and capricious standard of the Administrative Procedure Act ("APA")[29] or the less deferential motion to compel standard of Rules 37 and 45 of the Federal Rules of Civil Procedure.[30] The Third Circuit has not yet established which standard applies.[31]

Courts adopting the APA standard of review will override the agency's decision upon the movant showing that it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."[32] Alternatively, courts adopting the Rule 45 standard of review place the initial burden on the requesting party to show the information requested is relevant.[33] The burden then shifts to the objecting party to justify withholding discovery.[34]

## ARGUMENT

Similar to the analysis and conclusion reached earlier this year by Judge Singh in *Cognizant Tech. Sols. Corp. v. United States I.R.S.*, this Court need not decide whether to apply the APA's

---

[28] *Id.* §§ 5.45, 5.3(b).

[29] 5 U.S.C. §§ 702-706.

[30] Fed. R. Civ. P. 37(a), 45(d)(2)(B)(i).

[31] A party challenging the denial of a *Touhy* request may present a motion to compel to the district court presiding over the underlying action and need not file an ancillary action under the APA. *See Cognizant Tech. Sols. Corp. v. United States I.R.S.*, No. 23-3320 (PGS) (RLS), 2024 WL 2091284 at *7 n.68 (D.N.J. May 9, 2024).

[32] 5 U.S.C. § 706(2)(A). *See Cognizant Tech. Sols. Corp.*, 2024 WL 2091284 at *7.

[33] Fed. R. Civ. P. 45(d)(2)(B)(i); Fed. R. Civ. P. 37(a); *In re Novo Nordisk Sec. Litig.*, 530 F.Supp.3d 495, 501 (D.N.J. 2021).

[34] *Id.*

standard of review or the Rule 45 standard of review, as under either standard, Ms. Vithanalage's motion to compel prevails.[35]

Under the APA's standard of review, the DHS's denial of Ms. Vithanalage's *Touhy* Request is arbitrary and capricious.  Ms. Vithanalage's *Touhy* Request is fully compliant with the requirements set forth in DHS's *Touhy* regulations.  The requests (i) are highly relevant to Defendants' nearly decade-long endeavor to force Ms. Vithanalage to perform labor without compensation, (ii) are sufficiently detailed to enable DHS personnel to produce the requested testimony and documents with a reasonable amount of effort, (iii) seek records that cannot be obtained elsewhere and are not presently in the parties' possession, and (iv) do not seek information protected by the attorney-client privilege or deliberative process privilege.  And lastly, the DHS has a significant interest in the outcome of the instant litigation, which further weighs in favor of production.  DHS's cursory and boilerplate objections do not provide a rational justification for the wholesale denial of Ms. Vithanalage's discovery requests.

For the same reasons that render the DHS Denial Letter arbitrary and capricious, the DHS cannot establish that Ms. Vithanalage's *Touhy* Request is unduly burdensome under the less deferential Rule 45 standard of review.

---

[35]   *See Cognizant Tech. Sols. Corp. v. United States I.R.S.*, No. 23-3320 (PGS) (RLS), 2024 WL 2091284 at *10, 13 (D.N.J. May 9, 2024) (finding it unnecessary to determine whether to apply the Rule 45 or APA standard where either standard supported granting a motion to compel).

## I.     THE DHS'S RELEVANCE OBJECTION IS ARBITRARY AND CAPRICIOUS

A requesting party seeking official information from the DHS must "set forth in writing . . . the nature and relevance of the official information sought."[36]  To determine whether the requested discovery is relevant, courts consider the specific facts at issue.[37]

As explained in her *Touhy* Request, Ms. Vithanalage seeks highly relevant testimony and documents.  In particular, Ms. Vithanalage seeks Special Agents Benwell and Conyers's testimony regarding their investigation into whether Ms. Vithanalage was trafficked and subjected to forced labor without compensation.  She also seeks documents collected in the course of the Government's investigation and used in the prosecution of Defendant Al Hunaity.

Based on the facts underlying her claims against Defendants and in accordance with the broad standard applied to discovery under the Federal Rules of Civil Procedure, these requests bear directly on the issues of forced labor and unpaid wages.  Given the undeniable relevance of her requests, the DHS's relevance objection is arbitrary and capricious.

As an initial matter, the evidence establishing Defendant Al Hunaity's guilt is directly relevant to Defendant Qatarneh's liability under the TVPRA and New Jersey state laws.  Indeed, the criminal case and the present civil case significantly and indivisibly overlap.  Defendant Al Hunaity and Defendant Qatarneh were married when they met Ms. Vithanalage in Jordan in 2009.[38]  Together, the Defendants convinced Ms. Vithanalage to travel to the United States.[39]  The Defendants lived in the same home until approximately 2011, where many of the facts giving rise

---

[36]     6 C.F.R. § 5.45.

[37]     *Franchitti ex rel. United States v. Cognizant Tech. Sols. Corp.*, No. 17-6317 (PGS) (RLS), 2023 WL 2759075, at *5 (D.N.J. Apr. 3, 2023).

[38]     Am. Compl. ¶ 13.

[39]     *Id.* ¶¶ 14-15.

to the criminal prosecution and the instant civil case took place.[40]  After the Defendants' divorce, Ms. Vithanalage continued to provide childcare services for the Defendants' three mutual children, traveling back and forth between the Defendants' respective homes.[41]  Thus, the evidence gathered in the Government's case against Defendant Al Hunaity is necessarily relevant and material to Ms. Vithanalage's case against Defendant Qatarneh.

In light of the intersecting nature of the claims against both Defendants, Ms. Vithanalage's *Touhy* Request narrowly targets testimony and documents highly relevant to Ms. Vithanalage's claims pursuant to the TVPRA and New Jersey employment laws.  For example, evidence of the Defendants' communications with and concerning Ms. Vithanalage are directly relevant to whether Defendants "knowingly . . . obtain[ed] [her] labor or services" by "threats of serious harm," or "means of any scheme, plan, or pattern intended to cause [Ms. Vithanalage] to believe that, if [she] did not perform such labor or services, [she] . . . would suffer serious harm."[42] Evidence of the labor Ms. Vithanalage performed, her living conditions, and her possessions is also directly relevant to whether she was subjected to forced labor within the meaning of 18 U.S.C. § 1589.[43]  Along these same lines, evidence of the labor Ms. Vithanalage performed, along with communications surrounding that labor, is relevant to whether Defendants "knowingly benefit[ed]" from a venture engaged to obtain her labor, 18 U.S.C. § 1589(b), and whether they

---

[40]    *Id.* ¶¶ 16-20.

[41]    *Id.* ¶ 21.

[42]    18 U.S.C. § 1589(a).  *See, e.g.*, *United States v. Dann*, 652 F.3d 1160, 1168-71 (9th Cir. 2011) (finding threats of financial harm, reputational harm, and immigration consequences relevant to whether the plaintiff's labor was obtained by means of serious harm); *Doe v. Howard*, 2012 WL 3834867, at *4 (E.D. Va. Sept. 4, 2012) (finding empty promises of paid labor and psychological manipulation relevant to whether the defendants engaged in a "scheme" within the meaning of § 1589).

[43]    *See, e.g.*, *Muchira v. Al Rawaf*, 850 F.3d 605, 618-19 (4th Cir. 2017) (finding evidence of the plaintiff's living conditions relevant to whether the plaintiff was subjected to forced labor); *United States v. Callahan*, 801 F.3d 606, 620 (6th Cir. 2015) (finding "squalid living conditions, extreme isolation, threat of legal process, and violence" relevant to whether the plaintiff was subjected to forced labor).

simultaneously failed to pay Ms. Vithanalage regular hourly wages or the applicable overtime rate in accordance with New Jersey law.[44]  And finally, testimony and documents concerning Ms. Vithanalage's immigration status, whether she had possession of her passport, and any communications regarding the Defendants' decision to transport Ms. Vithanalage to the United States are directly relevant to whether Defendants obtained her labor "by means of the abuse or threatened abuse of law or legal process," whether they "knowingly recruit[ed], . . . or obtain[ed]" Ms. Vithanalage for her labor or services, and whether they knowingly confiscated her passport or other immigration document.[45]

In sum, the testimony and documents that Ms. Vithanalage requests are central to Plaintiff's claims under the TVPRA and New Jersey state laws, as they seek evidence of the labor and services she performed, without compensation, at the Defendants' direction.  They also target evidence of serious harm, threats of serious harm, or a scheme engaged to cause Ms. Vithanalage to believe she would suffer serious harm if she did not perform such labor.  Moreover, they target the financial and other benefits Defendants knowingly obtained as a direct result of Ms. Vithanalage's labor and services, along with their efforts to isolate Ms. Vithanalage and prevent her escape.  Given the highly relevant nature of her *Touhy* Request, DHS's relevance objection is arbitrary and capricious.

---

[44]     *See* N.J.S.A., 34:11-56a, *et seq.*; *Kiwanuka v. Bakilana*, 844 F. Supp. 2d 107, 121 (D.D.C. 2012) (finding the plaintiff's household services and the defendant's failure to pay wages relevant to whether the defendant benefited from her services and violated federal labor laws).

[45]     18 U.S.C. § 1592(a); 18 U.S.C. §§ 1589(a), 1590(a), 1592(s); *see Kiwanuka*, 844 F. Supp. 2d at 115 (finding threats of deportation relevant to whether the plaintiff's labor was obtained by threatened abuse of the law or legal process).

## II.    THE DHS'S OVERBREADTH AND UNDUE BURDEN OBJECTIONS ARE ARBITRARY AND CAPRICIOUS

According to the DHS's *Touhy* regulations, requesting parties must provide a "reasonable description" with "sufficient information to permit an organized, non-random search for the record."[46]  Additionally, the DHS directs requesting parties, "*[t]o the extent possible*" to "include specific information that *may* assist a component in identifying the requested records, such as the date, title or name, author, recipient, subject matter of the record, case number, file designation, or reference number."[47]

Ms. Vithanalage's requests comply fully with the DHS's *Touhy* regulations, as they are narrowly targeted to obtain information relevant to her claims of forced labor and employment law violations.  Ms. Vithanalage also has provided the dates to which her claims relate, the names of the relevant authors or recipients of the records requested, a description of the subject matter, and the docket number for *United States v. Al Hunaity*.  Moreover, to preface her request, Ms. Vithanalage demonstrated the relevance and importance of the information sought by providing a summary of the current litigation and its connection to *United States v. Al Hunaity*, notwithstanding the DHS's considerable pre-existing familiarity with the matter.[48]

The DHS's unspecified assertions of overbreadth and undue burden are arbitrary and capricious.  As a threshold matter, "Courts rarely find that relevant requests would constitute an undue burden."[49]  The DHS Denial Letter does not even attempt to justify a conclusion that the requested documents and testimony are relevant yet unduly burdensome.

---

[46]     6 C.F.R. § 5.3(b).

[47]     *Id.* (emphasis added).

[48]     Kotler Decl. Exh. A at 1-2.

[49]     *Fairholme Funds, Inc.*, 2019 WL 5864595, at *3 (granting motion to compel).

Indeed, the DHS Denial Letter provides no basis upon which to conclude that Ms. Vithanalage's *Touhy* Request is overly broad or unduly burdensome. Instead, the DHS Denial Letter summarily states, without explanation, that Ms. Vithanalage's requests do not satisfy the relevant regulations.[50] Such conclusory assertions are insufficient to sustain an undue burden or overbreadth objection. Under the DHS's *Touhy* regulations themselves, this cursory response fails to "inform [Ms. Vithanalage] what additional information is needed or why the request is otherwise insufficient."[51] Courts consistently reject undue burden or overbreadth objections that lack any supporting detail regarding the purported burden.[52] To wit, in *Cognizant*, Judge Singh rejected the IRS's claim that a *Touhy* request was overbroad, unduly burdensome, and vague where the requesting party "proffered sufficient information to the agency, showing the relevancy and importance of the sought-after records."[53]

Given the specificity with which Ms. Vithanalage tailored her *Touhy* Request and the absence of any support for the DHS's claim of undue burden, the DHS's objections based on overbreadth and undue burden are arbitrary and capricious.[54]

---

[50]  Kotler Decl. Exh. B at 3.

[51]  6 C.F.R. § 5.3(b).

[52]  *See Redland Soccer Club, Inc. v. Dep't of Army of U.S.*, 55 F.3d 827, 856 (3d Cir. 1995) (finding the statement that discovery requests were "overbroad and burdensome" inadequate to successfully object to an interrogatory); *In re 3M Combat Arms Earplug Prod. Liab. Litig.*, 2020 WL 6065076 (D. N.D. Fl. Oct. 14, 2020) ("Moreover, the Government has not presented an affidavit or other evidence in support of its claim of undue burden. This alone is a basis to reject the Government's claim."); *Fairholme Funds, Inc.*, 2019 WL 5864595, at *4 (finding "cursory or vague" explanations insufficient to support a finding of undue burden).

[53]  *Cognizant Tech. Sols. Corp.*, 2024 WL 2091284 at *10.

[54]  For the same reasons, the DHS Denial Letter fails to establish undue burden in accordance with the Rule 45 standard of review. *See Cognizant Tech. Sols. Corp. v. United States I.R.S.*, No. 23-3320 (PGS) (RLS), 2024 WL 2091284 at *10, 13 (D.N.J. May 9, 2024) (granting a motion to compel upon finding two agencies' denials of *Touhy* requests failed to meet the APA standard of review, and applying the same reasoning to find the denials failed to meet the Rule 45 standard of review); *see also Franchitti*, 2023 WL 2759075, at *7 (granting a motion to compel, first upon finding the DOJ's denial of a *Touhy* request arbitrary and capricious, and, second, finding the DOJ's denial necessarily failed the less deferential standard under Rule 45).

## III.    THE DHS'S AVAILABILITY OBJECTION IS ARBITRARY AND CAPRICIOUS

In determining whether to comply with a particular request, the DHS may consider whether compliance would be unduly burdensome under the applicable rules of discovery.[55]  The DHS Denial Letter claims, without support, that some of Ms. Vithanalage's requests are unduly burdensome because they "seek information that one would reasonably expect to be exchanged during the discovery process between the parties."[56]  To the contrary, the DHS, and in particular, Special Agents Benwell and Conyers, possesses unique information directly related to Ms. Vithanalage's claims that cannot and have not been obtained elsewhere.  Thus, the DHS's objection based on the undue burden of collecting otherwise obtainable records is arbitrary and capricious.

The requested materials cannot be procured though any means other than directly from the DHS.  With respect to the requested testimony, Special Agents Benwell and Conyers alone can testify to the development of the Government's case against Defendant Al Hunaity, and they alone can testify to their observations and impressions of Ms. Vithanalage's conditions of servitude.  In fact, they already provided such critical testimony during the criminal trial in *United States v. Al Hunaity*. Agent Conyers, for example, testified to the anonymous tip he received that spurred his investigation, his surveillance of both Defendants' homes, and his arrest of Defendant Al Hunaity on September 18, 2018.[57]

With respect to the requested documents, Ms. Vithanalage requests records collected during the course of the Special Agents' investigation.  The deadline to complete document discovery is approaching rapidly pursuant to the Court's Amended Scheduling Order.  Defendants

---

[55]    6 C.F.R. § 5.48(a)(1).

[56]    Kotler Decl. Exh. B at 3-4.

[57]    *See* Kotler Decl. Exh. E at 805:6-806:22, 808:1-810:11, 825:23-826:2.

cannot produce documents that either never were in their possession or that now are in the DHS's possession because they were collected during the DHS's investigation. Moreover, in the DHS Denial Letter, the DHS does not clarify precisely which information "one would reasonably expect" to be exchanged between the parties. Absent any explanation from the DHS, Ms. Vithanalage cannot plausibly determine what communications are in the DHS's possession and whether those communications already have been produced in discovery. Thus, the DHS's refusal to produce documents on the ground that they may exist elsewhere in the discovery process is arbitrary, capricious, and fails to establish undue burden.

## IV.    THE DHS'S PRIVILEGE OBJECTIONS ARE ARBITRARY AND CAPRICIOUS

Under its *Touhy* regulations, the DHS may consider whether compliance with a request would be appropriate under the relevant substantive law concerning privilege or disclosure of information.[58] As with the DHS's prior objections, its objection on the ground of privilege lacks the necessary support. The DHS Denial Letter contains a mere blanket assertion that some requests "seek information that *may* be covered by the attorney-client privilege and/or the deliberative process privilege."[59] Yet the DHS has not provided any particularized showing that specific documents, or even categories of documents, are protected by an applicable privilege. As Judge Singh aptly recognized in *Cognizant*, "[a]ny assertion of an applicable privilege is premature

---

[58]    6 C.F.R. § 5.48(a)(2).

[59]    Kotler Decl. Exh. B at 4 (emphasis added).

without the identification of specific documents or context such that it could be determined that a privacy concern or privilege actually attaches."[60]

Absent any support for the DHS's claims of privilege, this Court is "preclude[d] . . . from conducting a fulsome analysis of whether such privilege applies to any specific document that would otherwise be responsive to the Touhy request at issue." *Franchitti*, 2023 WL 2759075, at *7. Considering the DHS's failure provide any support for its claims of privilege, the DHS's boilerplate assertion of privilege is arbitrary and capricious.

## V. THE DHS'S OBJECTIONS FAIL TO ESTABLISH UNDUE BURDEN UNDER FED. R. CIV. P. 37 AND 45

As described above, Ms. Vithanalage met her initial burden of showing that her *Touhy* Request is relevant.[61] The DHS, however, failed to support its generic, sweeping objections to the *Touhy* Request.[62] Thus, the DHS has not satisfied its burden under Rules 37 and 45 to show that Ms. Vithanalage's *Touhy* Request is unduly burdensome.[63] Absent any "expla[nation] why discovery should not be permitted," Ms. Vithanalage's Motion to Compel must prevail.[64]

---

[60] *Cognizant Tech. Sols. Corp. v. United States Citizenship & Immigr. Servs.*, No. 23-3386 (PGS) (RLS), 2024 WL 2091281 at *7 (D.N.J. May 8, 2024).

[61] *See* Fed. R. Civ. P. 37(a); *see also infra* Part I.

[62] *See infra* Parts I through IV.

[63] *See Burgess v. Galloway, et al.*, No. 20-06744 (FLW) (DEA), 2021 WL 2661290, at *5 (D.N.J. Jan. 28, 2021) (denying a motion to quash a subpoena and finding a failure to satisfy the Rule 45 standard where the petitioner "[did] not, with specificity, state[] how he will suffer any undue burden" and failed to show a "clearly defined and serious injury" that would result from compliance with the subpoena at issue); *Ca. State Teachers Retirement Sys. v. Novo Nordisk, Inc.*, No. 19-16458 (FLW) (DEA), 2020 WL 6336199, at *12 (D.N.J. Oct. 29, 2020) (rejecting claim of undue burden under Rule 45 where the requesting party sought relevant and proportional documents and the objecting party failed to explain how the subpoena would impose an undue burden).

[64] *See Franchitti*, 2023 WL 2759075, at *4.

16

## VI.    THE DHS HAS A SIGNIFICANT INTEREST IN THE OUTCOME OF THE INSTANT LITIGATION

Courts favor disclosure in response to a third-party discovery request on a government agency where the agency is interested in the outcome of the litigation.[65]  Here, the DHS is hardly a "disinterested bystander."[66]  In fact, the DHS "has been involved with the underlying factual issues in this case from the beginning" and certainly could have anticipated its criminal case could "spawn litigation or discovery."[67]  Thus, the DHS's critical role in the investigation of Ms. Vithanalage's forced labor further weighs in favor of granting her Motion to Compel.

## <u>CONCLUSION</u>

For the foregoing reasons above, Ms. Vithanalage respectfully requests that this Court enter an order compelling the DHS to produce all testimony and documents responsive to her *Touhy* Request.

Dated: June 25, 2024
      New York, New York

Respectfully submitted,

By: */s/ David A. Kotler*
David A. Kotler
David A. Herman (admitted *pro hac vice*)
Nicholas Gersh (admitted *pro hac vice*)
**DECHERT LLP**
1095 Avenue of the Americas
New York, New York 10036

*Attorneys for Plaintiff Ms. Vithanalage*

---

[65]    *See Fairholme Funds, Inc. v. Federal Housing Finance Agency*, 2019 WL 5864595, at *4 (D.D.C. Nov. 8, 2019); *see also Cognizant Tech. Sols. Corp. v. United States I.R.S.*, No. 23-3320 (PGS) (RLS), 2024 WL 2091284 at *10 (D.N.J. May 9, 2024) (finding two agencies' interest in the outcome of the underlying action to weigh in favor of production).

[66]    *Id.*

[67]    *Id*.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 25, 2024, I caused a copy of the foregoing motion and

supporting papers to be electronically filed with the Clerk of the Court using the CM/ECF system,

which will send a notification of such filing to all ECF recipients in the above-captioned matter.


_/s/ David A. Kotler_____
David A. Kotler