# EXHIBIT C

1

2          **UNITED STATES DISTRICT COURT**
           **FOR THE DISTRICT OF NEW JERSEY**
3     _____

      UNITED STATES OF AMERICA,              CRIMINAL NUMBER:
4
                 v.                          **18-cr-00723-RBK**
5
      ALIA AL HUNAITY,                       **TRIAL VOLUME 2**
6
                 Defendant.
7     _____
            Mitchell H. Cohen Building & U.S. Courthouse
8           4th & Cooper Streets
            Camden, New Jersey  08101
9           April 30, 2019
            Commencing at 9:00 a.m.
10
      **B E F O R E:**              THE HONORABLE ROBERT B. KUGLER,
11                                  UNITED STATES DISTRICT JUDGE

12    **A P P E A R A N C E S:**

13         OFFICE OF THE UNITED STATES ATTORNEY
           BY:  ALYSON M. OSWALD, ASST. UNITED STATES ATTORNEY
14              ANDREW SCOTT MACURDY, ASST. UNITED STATES ATTORNEY
           401 MARKET STREET, 4TH FLOOR
15         CAMDEN, NEW JERSEY  08101

16         LAW OFFICES OF ROBERT D. KOVIC, ESQUIRE
           1 BRIDGE PLAZA, SUITE 275
17         FORT LEE, NEW JERSEY 07024
           FOR THE DEFENDANT
18
           GALANTUCCI & PATUTO
19         BY:  S. EMILE LISBOA IV, ESQUIRE
           55 STATE STREET
20         HACKENSACK, NEW JERSEY  07601
           FOR THE DEFENDANT
21
      **A L S O   P R E S E N T:**
22
           Alia Al Hunaity, Defendant
23              Carl Nami, Official Court Reporter
                   Carl_Nami@NJD.USCourts.Gov
24                    (609)439-5420
      Proceedings recorded by mechanical stenography; transcript
25          produced by computer-aided transcription.

1                                    **INDEX**

2    **WITNESS:**                                                    **PAGE:**

3

            **FLORENCE BURKE**                                    42
4           VOIR DIRE DIRECT EXAMINATION OF                        43
            FLORENCE BURKE BY MS. OSWALD:
5           VOIR DIRE CROSS EXAMINATION OF FLORENCE                53
            BURKE BY MR. LISBOA:
6           DIRECT EXAMINATION OF MISS BURKE BY MS.                65
            OSWALD:
7           CROSS-EXAMINATION OF MISS BURKE BY MR.                 86
            LISBOA:
8           REDIRECT EXAMINATION OF FLORENCE BURKE                 102
            BY MS. OSWALD:
9
            **BRADLEY JAMES BENWELL**                             105
10          DIRECT EXAMINATION OF BRADLEY JAMES                   105
            BENWELL BY MR. MACURDY:
11          VOIR DIRE DIRECT EXAMINATION OF BRADLEY               117
            JAMES BENWELL BY MR. MACURDY:
12          VOIR DIRE CROSS EXAMINATION OF BRADLEY                117
            JAMES BENWELL BY MR. LISBOA:
13          VOIR DIRE EXAMINATION OF SPECIAL AGENT                142
            BENWELL BY MR. LISBOA:
14          FURTHER DIRECT EXAMINATION OF SPECIAL                 144
            AGENT BENWELL BY MR. MACURDY:
15          VOIR DIRE EXAMINATION OF SPECIAL AGENT                146
            BENWELL BY MR. LISBOA:
16          FURTHER DIRECT EXAMINATION OF SPECIAL                 148
            AGENT BENWELL BY MR. MACURDY:
17          VOIR DIRE EXAMINATION OF SPECIAL AGENT                154
            BENWELL BY MR. LISBOA:
18          vOIR DIRE EXAMINATION OF BRADLEY JAMES                170
            BENWELL BY MR. LISBOA:
19          DIRECT EXAMINATION OF BRADLEY JAMES                   173
            BENWELL BY MR. MACURDY:
20          VOIR DIRE EXAMINATION OF BRADLEY JAMES                182
            BENWELL BY MR. LISBOA:
21          DIRECT EXAMINATION OF BRADLEY JAMES                   186
            BENWELL BY MR. MACURDY:
22          VOIR DIRE EXAMINATION OF BRADLEY JAMES                190
            BENWELL BY MR. LISBOA:
23          CONTINUED DIRECT EXAMINATION OF BRADLEY               191
            JAMES BENWELL BY MACURDY:
24
                            *****
25

```
 1   GOVERNMENT EXHIBIT 302.4 WAS RECEIVED IN EVIDENCE    109
     Sidebar                                               111
 2   GOVERNMENT EXHIBIT 302.3 WAS RECEIVED IN EVIDENCE    112
     GOVERNMENT EXHIBIT 302.2 WAS RECEIVED IN EVIDENCE    113
 3   GOVERNMENT EXHIBIT 302.1 WAS RECEIVED IN EVIDENCE    114
     Sidebar                                               115
 4   GOVERNMENT EXHIBIT 310 WAS RECEIVED IN EVIDENCE      123
     GOVERNMENT EXHIBIT 310 WAS RECEIVED IN EVIDENCE      124
 5   GOVERNMENT EXHIBIT 107 WAS RECEIVED IN EVIDENCE      127
     GOVERNMENT EXHIBIT 307.5 WAS RECEIVED IN EVIDENCE    129
 6   GOVERNMENT EXHIBIT 307.8 WAS RECEIVED IN EVIDENCE    130
     GOVERNMENT EXHIBIT 307.10 WAS RECEIVED IN EVIDENCE   131
 7   GOVERNMENT EXHIBIT 307.11 WAS RECEIVED IN EVIDENCE   131
     GOVERNMENT EXHIBIT 307.47 WAS RECEIVED IN EVIDENCE   132
 8   GOVERNMENT EXHIBIT 307.15 WAS RECEIVED IN EVIDENCE   133
     GOVERNMENT EXHIBIT 307.12 WAS RECEIVED IN EVIDENCE   133
 9   GOVERNMENT EXHIBIT 307.45 WAS RECEIVED IN EVIDENCE   134
     GOVERNMENT EXHIBIT 307.41 WAS RECEIVED IN EVIDENCE   134
10   GOVERNMENT EXHIBIT 307.43 WAS RECEIVED IN EVIDENCE   135
     GOVERNMENT EXHIBIT 307.4 WAS RECEIVED IN EVIDENCE    137
11   GOVERNMENT EXHIBIT 307.18 WAS RECEIVED IN EVIDENCE   137
     GOVERNMENT EXHIBIT 307.23 WAS RECEIVED IN EVIDENCE   138
12   GOVERNMENT EXHIBIT 307.24 WAS RECEIVED IN EVIDENCE   139
     GOVERNMENT EXHIBIT 307.25 WAS RECEIVED IN EVIDENCE   139
13   GOVERNMENT EXHIBIT 307.27 WAS RECEIVED IN EVIDENCE   140
     GOVERNMENT EXHIBIT 307.28 WAS RECEIVED IN EVIDENCE   141
14   GOVERNMENT EXHIBIT 307.72 WAS RECEIVED IN EVIDENCE   141
     GOVERNMENT EXHIBIT 307.49 WAS RECEIVED IN EVIDENCE   142
15   GOVERNMENT EXHIBIT 307.50 WAS RECEIVED IN EVIDENCE   144
     GOVERNMENT EXHIBIT 307.51 WAS RECEIVED IN EVIDENCE   144
16   GOVERNMENT EXHIBIT 307.52 WAS RECEIVED IN EVIDENCE   145
     GOVERNMENT EXHIBIT 307.63 WAS RECEIVED IN EVIDENCE   145
17   GOVERNMENT EXHIBIT 307.64 WAS RECEIVED IN EVIDENCE   148
     GOVERNMENT EXHIBIT 101 WAS RECEIVED IN EVIDENCE      150
18   GOVERNMENT EXHIBIT 102 WAS RECEIVED IN EVIDENCE      151
     GOVERNMENT EXHIBIT 100 WAS RECEIVED IN EVIDENCE      155
19   GOVERNMENT EXHIBIT 100.1 WAS RECEIVED IN EVIDENCE    157
     GOVERNMENT EXHIBIT 307.68 WAS RECEIVED IN EVIDENCE   160
20   GOVERNMENT EXHIBIT 307.29 WAS RECEIVED IN EVIDENCE   160
     GOVERNMENT EXHIBIT 307.32 WAS RECEIVED IN EVIDENCE   161
21   GOVERNMENT EXHIBIT 307.33 WAS RECEIVED IN EVIDENCE   161
     GOVERNMENT EXHIBIT 307.34 WAS RECEIVED IN EVIDENCE   162
22   GOVERNMENT EXHIBIT 307.35 WAS RECEIVED IN EVIDENCE   162
     GOVERNMENT EXHIBIT 307.36 WAS RECEIVED IN EVIDENCE   163
23   GOVERNMENT EXHIBIT 307.38 WAS RECEIVED IN EVIDENCE   164
     GOVERNMENT EXHIBIT 307.39 WAS RECEIVED IN EVIDENCE   164
24   GOVERNMENT EXHIBIT 307.54 WAS RECEIVED IN EVIDENCE   165
     GOVERNMENT EXHIBIT 307.55 WAS RECEIVED IN EVIDENCE   166
25   GOVERNMENT EXHIBIT 103 WAS RECEIVED IN EVIDENCE      167
     GOVERNMENT EXHIBIT 105.1 WAS RECEIVED IN EVIDENCE    172
```

```
 1   GOVERNMENT EXHIBIT 105.2 WAS RECEIVED IN EVIDENCE        174
     GOVERNMENT EXHIBIT 105.3 WAS RECEIVED IN EVIDENCE        175
 2   GOVERNMENT EXHIBIT 105.4 WAS RECEIVED IN EVIDENCE        175
     GOVERNMENT EXHIBIT 104 WAS RECEIVED IN EVIDENCE          176
 3   Sidebar                                                  181
     Sidebar                                                  185
 4   GOVERNMENT EXHIBIT 202.1A WAS RECEIVED IN EVIDENCE       186
     GOVERNMENT EXHIBIT 200.1A WAS RECEIVED IN EVIDENCE       191
 5   GOVERNMENT EXHIBIT 200.1B WAS RECEIVED IN EVIDENCE       193

 6                              * * * * *

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

| | | |
|---|---|---|
| 02:34 | 1 | THE WITNESS:  Thank you, your Honor. |
| 02:34 | 2 | THE COURT:  Your next witness, please. |
| 02:34 | 3 | MR. MACURDY:  Your Honor, the government calls |
| 02:34 | 4 | Special Agent Brad Benwell. |
| 02:35 | 5 | THE COURT:  Come forward, sir.  How are you doing? |
| 02:35 | 6 | Come up here. |
| 02:35 | 7 | How are you today? |
| 02:35 | 8 | THE WITNESS:  Good.  How are you? |
| 02:35 | 9 | THE COURT:  Raise your right hand. |
| 02:35 | 10 | (**BRADLEY JAMES BENWELL**, HAVING BEEN DULY SWORN/AFFIRMED, |
| 02:35 | 11 | TESTIFIED AS FOLLOWS:) |
| 02:35 | 12 | THE WITNESS:  I do. |
| 02:35 | 13 | THE COURT:  State your full name. |
| 02:35 | 14 | THE WITNESS:  Bradley James Benwell. |
| 02:35 | 15 | THE COURT:  Spell your last name, please. |
| 02:35 | 16 | THE WITNESS:  B as in Bravo, E, N as in November, |
| 02:35 | 17 | W-E-L-L. |
| 02:35 | 18 | THE COURT:  Mr. Benwell, please have a seat and try |
| 02:35 | 19 | to remember to speak into this microphone. |
| 02:35 | 20 | THE WITNESS:  Yes, your Honor. |
| 02:35 | 21 | THE COURT:  Thank you. |
| 02:35 | 22 | You may proceed. |
| 02:35 | 23 | MR. MACURDY:  Thank you, your Honor. |
| 02:35 | 24 | (DIRECT EXAMINATION OF BRADLEY JAMES BENWELL BY MR. MACURDY:) |
| 02:35 | 25 | Q.  Good morning, Special Agent Benwell. |

| | | |
|--|--|--|
|02:35|1|A.  Good morning.|
|02:36|2|Q.  What kind of work do you do?|
|02:36|3|A.  I'm a special agent with Homeland Security Investigations|
|02:36|4|in Newark.|
|02:36|5|Q.  Okay.  And what does a special agent at Homeland Security|
|02:36|6|do?|
|02:36|7|A.  We investigate a myriad of crimes and areas involving|
|02:36|8|immigration and customs laws.|
|02:36|9|Q.  How long have you done that?|
|02:36|10|A.  A little over 20 years.|
|02:36|11|Q.  Now, were you involved with the investigation of the|
|02:36|12|defendant in this case, Alia al Hunaity?|
|02:36|13|A.  Yes, I was.|
|02:36|14|Q.  And what was your role?|
|02:36|15|A.  I was a member of the search team that executed a search|
|02:36|16|warrant at 522 Teal Plaza on September 18th of last year.|
|02:36|17|Q.  And what town was 522 Teal Plaza in?|
|02:36|18|A.  That's in Secaucus.|
|02:36|19|Q.  Now, how did this investigation begin?|
|02:36|20|A.  It began with a tip to our office from a concerned|
|02:36|21|citizen.|
|02:36|22|Q.  And on a general level, can you just tell us about the|
|02:36|23|nature of that tip that began the investigation?|
|02:36|24|        MR. LISBOA:  Objection as to hearsay, Judge.|
|02:36|25|        THE COURT:  Well, it's not being offered for the|

| | | |
|---|---|---|
| 02:37 | 1 | truth.  It's being offered to explain how the investigation |
| 02:37 | 2 | began and why apparently the search was conducted.  Is that |
| 02:37 | 3 | correct? |
| 02:37 | 4 | MR. MACURDY:  That is correct, your Honor. |
| 02:37 | 5 | THE COURT:  You may continue. |
| 02:37 | 6 | THE WITNESS:  The tip involved a victim residing at |
| 02:37 | 7 | that 522 Teal Plaza that was working, not getting paid, and |
| 02:37 | 8 | unable to leave. |
| 02:37 | 9 | BY MR. MACURDY: |
| 02:37 | 10 | Q.  Was an investigation begun after that tip was called in? |
| 02:37 | 11 | A.  Yes. |
| 02:37 | 12 | Q.  Approximately, Agent, do you recall what month the tip |
| 02:37 | 13 | came in? |
| 02:37 | 14 | A.  I believe it was in August of 2018. |
| 02:37 | 15 | Q.  Okay.  What was the next step in the investigation after |
| 02:37 | 16 | that? |
| 02:37 | 17 | A.  Well, the next step is to verify the allegations in the |
| 02:37 | 18 | complaint.  And that involved interviewing witnesses, |
| 02:37 | 19 | interviewing the victim, and conducting surveillance of the |
| 02:37 | 20 | location to just verify that the people that lived where they |
| 02:37 | 21 | were supposed to live. |
| 02:37 | 22 | Q.  And was that investigation, in fact, done? |
| 02:38 | 23 | A.  Yes, it was. |
| 02:38 | 24 | Q.  And so after that investigation was done, what was the |
| 02:38 | 25 | next steps taken by Homeland Security? |

02:38   1    A.   The next step was to apply for a federal search warrant

02:38   2    for the residence.

02:38   3    Q.   All right.  Now, you mentioned this date.  I will direct

02:38   4    you to September 18th, 2018.  Now, was a federal search

02:38   5    warrant obtained in the case?

02:38   6    A.   Yes, it was.

02:38   7    Q.   And on September 18th, 2018, what took place on that day?

02:38   8    A.   On that day, the federal search warrant was executed and

02:38   9    the defendant was placed under arrest, prior to the search

02:38   10   commencing.

02:38   11   Q.   Okay.  And, once again, where did this take place?

02:38   12   A.   At 522 Teal Plaza in Secaucus.

02:38   13   Q.   Now, could you just briefly for the jury describe what

02:38   14   the neighborhood is like at 522 Teal Plaza?

02:38   15   A.   It's an apartment or a condominium development.  It has a

02:38   16   fence running around the exterior and you need to pass through

02:39   17   a gate to gain entrance into the facility, or into the

02:39   18   development.

02:39   19   Q.   And how does one gain entrance into that gate at the

02:39   20   front of the facility?

02:39   21   A.   You have to identify yourself to an attendant working in

02:39   22   a guard shack, and that attendant will then open the gate.

02:39   23   Q.   Now, the specific residence you are talking about within

02:39   24   the community of 522 --

02:39   25   A.   Yes.

02:39    1    Q.    -- is that a single-family home or multi-unit dwelling?

02:39    2    A.    522 is a single-family unit.

02:39    3    Q.    Okay.  Is it attached to any other dwellings?

02:39    4    A.    Yes.

02:39    5    Q.    Okay.  Now, you mentioned the search warrant was

02:39    6    obtained.  What was the purpose of the execution of the search

02:39    7    warrant?

02:39    8    A.    It was to gather additional evidence involving the

02:39    9    investigation.

02:39   10         MR. MACURDY:  Ms. Reed, if you could pull up for our

02:39   11    screens, for me and the witness and the Judge, Exhibit 302.4.

02:40   12         THE COURT:  Any objection to this?

02:40   13         MR. LISBOA:  No, Judge.

02:40   14         THE COURT:  302.4 may be received in evidence.  You

02:40   15    may display that.

02:40   16    (GOVERNMENT EXHIBIT 302.4 WAS RECEIVED IN EVIDENCE.)

02:40   17         MR. MACURDY:  Thank you, your Honor.

02:40   18         Ms. Reed, if you could publish that for the jurors.

02:40   19         (Document was published.)

02:40   20    BY MR. MACURDY:

02:40   21    Q.    What are we looking at in this picture, Special Agent

02:40   22    Benwell?

02:40   23    A.    That's the exterior of the unit, 522, at Teal Plaza.

02:40   24    Q.    Okay.  And what's at the very bottom of the structure?

02:40   25    A.    It's a covered garage.

02:40    1    Q.   Okay.  Now, on the date of the search warrant,

02:40    2    September 18th, 2018, where did you first go that day?

02:40    3    A.   I first maintained surveillance of the defendant's

02:40    4    vehicle.

02:41    5    Q.   Okay.  Where was the defendant's vehicle?

02:41    6    A.   It was parked in the garage beneath her unit.

02:41    7    Q.   Okay.  Can you see that in this picture?

02:41    8    A.   Yes.

02:41    9    Q.   Okay.  Can you just -- I think you can circle on your

02:41   10    screen, if you just show the jurors where you are talking

02:41   11    about, the general vicinity?

02:41   12         It's not coming up?

02:41   13    A.   It's not coming up.

02:41   14    Q.   Okay.  But, again, do you see at the bottom of the

02:41   15    structure, is that where you are talking about?

02:41   16    A.   Yes, the bottom of the structure, where the two vehicles

02:41   17    are located.

02:41   18    Q.   Okay.  So what time did you arrive, approximately, what

02:41   19    time of day to the 522 Teel on that date?

02:41   20    A.   We arrived and commenced surveillance probably

02:41   21    approximately 6:30 a.m.

02:41   22    Q.   And, now, was it just you or other members of your team

02:41   23    there?

02:41   24    A.   There were other members of our squad that were there.

02:41   25    Q.   And what was the sort of plan of action for the day?

02:42   1    A.   Our goal was to initiate surveillance on the defendant's

02:42   2    vehicle.  Once the defendant entered the vehicle, she was

02:42   3    approached by two other his special agents and placed under

02:42   4    arrest, and once that occurred, we would initiate the

02:42   5    search -- the search warrant execution of 522.

02:42   6           MR. MACURDY:  Ms. Reed, if you could pull up Exhibit

02:42   7    302.3, just for the witness and counsel and the judge.

02:42   8           THE COURT:  Any objection?

02:42   9           MR. LISBOA:  Yes, Judge.  I'd like to be heard at

02:42   10   sidebar.

02:42   11          THE COURT:  Sidebar.  Excuse us, ladies and

02:42   12   gentlemen.

02:43   13                        (Sidebar)

02:43   14          THE COURT:  Yes, sir.

02:43   15          MR. LISBOA:  My question is what the relevancy of

02:43   16   this particular picture is.

02:43   17          MR. MACURDY:  I'm just trying to tell the story of

02:43   18   what happened.  The witness testified that she was entering

02:43   19   her car at the time of the arrest, and this is a picture of

02:43   20   her car in the garage.

02:43   21          MR. LISBOA:  The objection, Judge, is I don't think

02:43   22   it's really -- I'm not objecting to whether she was arrested

02:43   23   getting into her car, but the objection is the picture is

02:43   24   prejudicial.  It is a Mercedes Benz, and I believe the

02:43   25   government is trying to somehow portray she is driving a

02:43  1   Mercedes and somehow it's a lot of money.

02:43  2          THE COURT:  You are making a Rule 403 objection to a

02:43  3   picture of a car?

02:43  4          MR. LISBOA:  It's a picture of a car, Judge.  It's

02:43  5   not relevant -- there is a picture of the car in the driveway,

02:43  6   in the entirety of the townhouse.  I'm objecting to this

02:43  7   picture as being prejudicial.  I don't even think it's

02:43  8   relevant to any issue in this case.  There is no dispute as to

02:43  9   whether she was arrested, she was, and she was arrested

02:43  10  getting into her car.

02:43  11         THE COURT:  Well, it just shows the car that he just

02:44  12  testified to.  The way this was set up is when she got in the

02:44  13  car, they would move in to arrest and execute the search

02:44  14  warrant.  I don't see what the unfair prejudice is.  It's the

02:44  15  car that was involved in the search.  So I'm going to overrule

02:44  16  the objection.

02:44  17                       (Open Court)

02:44  18         THE COURT:  All right.  Exhibit 302.3 is admitted

02:44  19  into evidence.  You may display that.

02:44  20  (GOVERNMENT EXHIBIT 302.3 WAS RECEIVED IN EVIDENCE.)

02:44  21         (Document was published.)

02:44  22  BY MR. MACURDY:

02:44  23  Q.   Okay.  Special Agent Benwell, what are we looking at in

02:44  24  this picture?

02:44  25  A.   That's the defendant's vehicle.

BERGEN - DIRECT - MACURDY                        113

| | | |
|--|--|--|
| 02:44 | 1 | Q.  And is that the location -- you had just mentioned she |
| 02:44 | 2 | was entering her car when she was arrested.  Is that -- do you |
| 02:45 | 3 | see that in this photograph? |
| 02:45 | 4 | A.  Yes. |
| 02:45 | 5 | Q.  Okay.  Was she, in fact, arrested that morning? |
| 02:45 | 6 | A.  Yes, she was. |
| 02:45 | 7 | Q.  At approximately what time was she arrested? |
| 02:45 | 8 | A.  I think -- |
| 02:45 | 9 | Q.  Just if you recall. |
| 02:45 | 10 | A.  I would say approximately 7:30. |
| 02:45 | 11 | Q.  Okay.  Now, after the defendant was arrested, what was |
| 02:45 | 12 | the next step in the investigation? |
| 02:45 | 13 | A.  The next step was to enter 522 and begin the search |
| 02:45 | 14 | warrant execution. |
| 02:45 | 15 | Q.  Okay.  And can you see on this picture where the |
| 02:45 | 16 | defendant was entering to her car from?  If it's depicted. |
| 02:45 | 17 | A.  I remember her entering from what would have been the |
| 02:45 | 18 | right of this vehicle. |
| 02:45 | 19 | MR. MACURDY:  Okay.  Ms. Reed, if we could pull up |
| 02:46 | 20 | 302.2. |
| 02:46 | 21 | THE COURT:  Any objection? |
| 02:46 | 22 | MR. LISBOA:  No, Judge. |
| 02:46 | 23 | THE COURT:  302.2 is received in evidence.  It may be |
| 02:46 | 24 | displayed. |
| 02:46 | 25 | (GOVERNMENT EXHIBIT 302.2 WAS RECEIVED IN EVIDENCE.) |

| | | |
|---|---|---|
| 02:46 | 1 | (Document was published. |
| 02:46 | 2 | BY MR. MACURDY: |
| 02:46 | 3 | Q.  Special Agent Benwell, what's in this picture? |
| 02:46 | 4 | A.  That's the exterior of 522 Teal Plaza. |
| 02:46 | 5 | Q.  Okay.  And we talked about before -- is it adjoining any |
| 02:46 | 6 | other residences? |
| 02:46 | 7 | A.  It's a multi-dwelling structure, but 522 is its own |
| 02:46 | 8 | separate unit within the development. |
| 02:46 | 9 | MR. MACURDY:  Okay.  Ms. Reed, if you could pull up |
| 02:46 | 10 | 302.1. |
| 02:46 | 11 | THE COURT:  Any objection? |
| 02:46 | 12 | MR. LISBOA:  No, Judge. |
| 02:46 | 13 | THE COURT:  302.1 is received in evidence.  You may |
| 02:47 | 14 | display that now. |
| 02:47 | 15 | (GOVERNMENT EXHIBIT 302.1 WAS RECEIVED IN EVIDENCE.) |
| 02:47 | 16 | (Document was published.) |
| 02:47 | 17 | BY MR. MACURDY: |
| 02:47 | 18 | Q.  What's in this picture, 302.1, Special Agent Benwell? |
| 02:47 | 19 | A.  That's the front door of 522. |
| 02:47 | 20 | Q.  Okay.  Now, how many stories are within the apartment of |
| 02:47 | 21 | 522 Teal? |
| 02:47 | 22 | A.  There were two stories. |
| 02:47 | 23 | Q.  Okay.  And where did you enter the house? |
| 02:47 | 24 | A.  We entered the house through the front door. |
| 02:47 | 25 | Q.  And is that -- is this the front door on 302.1? |

| | | |
|---|---|---|
| 02:47 | 1 | A.   Yes. |
| 02:47 | 2 | Q.   All right.  Now, when you entered the house after the |
| 02:47 | 3 | defendant's arrest, what individuals were present inside the |
| 02:47 | 4 | home? |
| 02:47 | 5 | A.   The victim was present as well as three children of the |
| 02:47 | 6 | defendant. |
| 02:47 | 7 | MR. MACURDY:  All right.  Ms. Reed, could you pull up |
| 02:47 | 8 | Exhibit 310 for Agent Benwell? |
| 02:48 | 9 | THE COURT:  Any objection to 310? |
| 02:48 | 10 | MR. LISBOA:  Judge, can we be heard at sidebar? |
| 02:48 | 11 | THE COURT:  Sure. |
| 02:48 | 12 | (Sidebar) |
| 02:48 | 13 | MR. KOVIC:  We object to this photo.  We request that |
| 02:48 | 14 | the original be produced because we have reason to believe |
| 02:48 | 15 | this is not -- this is -- the photo has been altered.  We are |
| 02:48 | 16 | not saying you guys, but we spoke to our client about that |
| 02:48 | 17 | photo. |
| 02:48 | 18 | There are things missing in the background.  We can |
| 02:48 | 19 | see that the photo has been cropped.  All we would like to do |
| 02:48 | 20 | is see the original because the colors would enhance -- |
| 02:48 | 21 | MR. LISBOA:  Her shoulder is hanging off now -- |
| 02:48 | 22 | THE COURT:  Excuse me.  Who is in the picture?  Who |
| 02:48 | 23 | is it supposed to be? |
| 02:48 | 24 | MR. LISBOA:  It's supposed to be the alleged victim |
| 02:49 | 25 | in the case. |

| | | |
|---|---|---|
| 02:49 | 1 | THE COURT:  Okay.  And all he has to do is say that |
| 02:49 | 2 | that depicts the way she looked on the day they took the |
| 02:49 | 3 | picture and that's -- |
| 02:49 | 4 | MR. LISBOA:  The problem is we believe that certain |
| 02:49 | 5 | things have been redacted or Photoshopped out of that photo. |
| 02:49 | 6 | MR. MACURDY:  First I'm hearing this about this, your |
| 02:49 | 7 | Honor. |
| 02:49 | 8 | MR. KOVIC:  We just got this a couple of days ago. |
| 02:49 | 9 | We just got this photograph.  We just looked at it -- we just |
| 02:49 | 10 | got this photo a couple days ago, so we didn't even have time |
| 02:49 | 11 | to look at it.  We spoke to the client yesterday about it, and |
| 02:49 | 12 | while we were sitting here, which is like, all we want to do |
| 02:49 | 13 | is look at the original.  We are not saying they did it, |
| 02:49 | 14 | Judge. |
| 02:49 | 15 | THE COURT:  We are going to have to voir dire this |
| 02:49 | 16 | witness about this evidence.  I'm going to have to excuse the |
| 02:49 | 17 | jurors. |
| 02:44 | 18 | (Open Court) |
| 02:49 | 19 | THE COURT:  Ladies and gentlemen of the jury, we need |
| 02:49 | 20 | to take a short break at this time.  So please return to your |
| 02:49 | 21 | deliberation room and I will be back shortly to come get you. |
| 02:49 | 22 | Thank you very much.  Don't discuss the case or do |
| 02:49 | 23 | any research about it. |
| 02:49 | 24 | THE DEPUTY CLERK:  All rise. |
| 02:49 | 25 | (The Jury left the courtroom at 11:48 a.m.) |

BENWELL - VOIR DIRE - MACURDY                    117

02:50    1              THE COURT:  Can we put that photo back up on the
02:50    2    screens, please?
02:50    3              Okay.  I'm asking the witness, can you see this
02:50    4    photograph?
02:50    5              THE WITNESS:  Yes.
02:50    6              THE COURT:  All right.  Counsel, do a normal
02:50    7    authenticity questioning of this witness.  Then I'll let
02:50    8    Mr. Lisboa cross-examine on that.
02:50    9    (VOIR DIRE DIRECT EXAMINATION OF BRADLEY JAMES BENWELL BY
02:50   10    MR. MACURDY:)
02:50   11    Q.  Special Agent Benwell, do you recognize what's depicted
02:51   12    in this photograph?
02:51   13    A.  Yes.
02:51   14    Q.  And what's depicted in this photograph?
02:51   15    A.  It's Mary, the victim.
02:51   16    Q.  And have you seen Mary in person before?
02:51   17    A.  Yes.
02:51   18    Q.  And is this a fair and accurate depiction of the way that
02:51   19    Mary looked, her face at least --
02:51   20    A.  Yes.
02:51   21    Q.  -- on the date of the search warrant?
02:51   22    A.  Yes.
02:51   23              THE COURT:  Cross-examine, Mr. Lisboa.
02:51   24              MR. LISBOA:  Thank you.
02:51   25    (VOIR DIRE CROSS EXAMINATION OF BRADLEY JAMES BENWELL BY

LISBOA - LISBOA                                    118

02:51    1  MR. LISBOA:)
02:51    2  Q.   Good afternoon, Agent.
02:51    3       With regard to photograph, do you have that up in front
02:51    4  you on the screen?
02:51    5  A.   Yes, sir.
02:51    6  Q.   Okay.  Did you take this photograph?
02:51    7  A.   No, I did not.
02:51    8  Q.   Can you tell us who took this photograph?
02:51    9  A.   I'm -- I'm not sure.  I can give you two possible --
02:51   10  Q.   Give us some possibles.
02:51   11  A.   Either Agent Acedro Cruz or Agent Jill Lasseter.
02:51   12  Q.   Okay.  When was the first time that you saw this
02:51   13  photograph?
02:51   14  A.   Just the photograph?
02:52   15  Q.   Just this photograph.
02:52   16  A.   Possibly two weeks ago.
02:52   17  Q.   Okay.  Now, when you saw it two weeks ago, did you
02:52   18  realize that the right shoulder of the person depicted in 310
02:52   19  is hanging off the white -- looks like the white edge of the
02:52   20  photograph?
02:52   21       THE COURT:  I don't understand.  Do you understand
02:52   22  what that question means?
02:52   23       THE WITNESS:  No, I don't.
02:52   24       THE COURT:  I don't understand.
02:52   25       MR. LISBOA:  If I can approach, I have a printout.

*United States District Court*
*District of New Jersey*

| | | |
|---|---|---|
| 02:52 | 1 | THE COURT:  I have it up here.  When you say it's |
| 02:52 | 2 | hanging off, what do you mean? |
| 02:52 | 3 | MR. LISBOA:  Judge, there is a white border running |
| 02:52 | 4 | along the right side of 310. |
| 02:52 | 5 | THE COURT:  Oh. |
| 02:52 | 6 | MR. LISBOA:  It appears that the person depicted's |
| 02:52 | 7 | shoulder falls off the border. |
| 02:52 | 8 | THE COURT:  I got you.  I understand. |
| 02:52 | 9 | Do you understand what he's talking about? |
| 02:52 | 10 | Do you see the white border of the photograph?  It |
| 02:52 | 11 | starts up at the top. |
| 02:52 | 12 | THE WITNESS:  Yes. |
| 02:52 | 13 | THE COURT:  Do you see that faint line? |
| 02:52 | 14 | THE WITNESS:  Yes. |
| 02:52 | 15 | THE COURT:  And then this shoulder invades the |
| 02:52 | 16 | border. |
| 02:52 | 17 | THE WITNESS:  Yes.  Okay.  I understand. |
| 02:52 | 18 | THE COURT:  Okay.  Go ahead. |
| 02:52 | 19 | BY MR. LISBOA: |
| 02:52 | 20 | Q.  And, again, Agent, with regard to this photo, you didn't |
| 02:53 | 21 | take the photo; is that right? |
| 02:53 | 22 | A.  Correct. |
| 02:53 | 23 | Q.  Did you do anything with it in terms of either storing it |
| 02:53 | 24 | or doing anything with it, digitally? |
| 02:53 | 25 | A.  No. |

```
02:53    1   Q.   Okay.  So when you were there and actually saw -- did you
02:53    2   see this picture being taken?
02:53    3   A.   I don't recall.
02:53    4   Q.   Okay.  Do you recall if there was a picture on the wall
02:53    5   which would be the right of the person depicted's head?  A
02:53    6   painting?
02:53    7   A.   To my right, if I'm looking at it, or her right?
02:53    8   Q.   When you look at the picture, if you look directly to the
02:53    9   right of the person's, I guess, the eyes, directly to the
02:53   10   right, on that sort of a white-colored wall, do you recall a
02:53   11   painting being on that wall?
02:53   12   A.   No, I don't.
02:53   13   Q.   So with regard to 310, you didn't take the photo; is that
02:53   14   right?
02:53   15   A.   Correct.
02:53   16   Q.   You don't remember if you were present to see the photo
02:53   17   being taken; is that right?
02:53   18   A.   I don't know if I was in the room when that photo was
02:53   19   taken.
02:53   20   Q.   You don't recall a painting being on the wall?
02:54   21   A.   I don't recall any paintings or wall art.
02:54   22   Q.   Okay.  So with regard to this photograph, you can't say
02:54   23   if it had some -- you can't explain why the shoulder is
02:54   24   hanging off the edge there; is that right?
02:54   25   A.   All I can say is that the gap between the shoulder and
```

02:54  1  the right border is -- between the shoulder and the edge on

02:54  2  her shoulder is the same distance as the border between her

02:54  3  shoulder on the left.

02:54  4  Q.   You think so?

02:54  5  A.   I think where her -- where her left shoulder ends and the

02:54  6  picture ends, the space between her shoulder and that -- and

02:54  7  the border is -- appears to be the same to me as the space

02:54  8  between her right shoulder, the white -- between her right

02:54  9  shoulder and the edge of the picture.

02:54  10  Q.   So you are saying you don't see that the white border

02:55  11  cuts down through her shoulder on the right side?

02:55  12  A.   I see that.  I'm talking about the bottom right corner

02:55  13  where it says -- to the right and below where it says

02:55  14  Government Exhibit 310.

02:55  15  Q.   Okay.  With regard to this photograph, you don't know why

02:55  16  the photograph rendered like it did; is that right?

02:55  17  A.   No, I don't know.

02:55  18  Q.   And, again, you don't know if there was a picture that

02:55  19  might have been Photoshopped out or taken off the wall or

02:55  20  something like that?

02:55  21  A.   I don't remember if there was a picture on the wall.

02:55  22          MR. LISBOA:  Judge, the objection is I don't think

02:55  23  this witness can authenticate this picture.  I think the Court

02:55  24  can see that there is an issue with -- I don't know if this

02:55  25  person was transposed on the picture.  Just it's odd and I do

| | | |
|---|---|---|
| 02:55 | 1 | have an offer of proof of a photograph of the hallway so... |
| 02:55 | 2 | THE COURT:  Of the what?  Photograph of the what?  I |
| 02:56 | 3 | didn't hear what you said. |
| 02:56 | 4 | MR. LISBOA:  Of this actual hallway.  I apologize, |
| 02:56 | 5 | Judge. |
| 02:56 | 6 | THE COURT:  Which hallway? |
| 02:56 | 7 | MR. LISBOA:  Our position is -- |
| 02:56 | 8 | THE COURT:  Look, you understand this is the first |
| 02:56 | 9 | time I've ever seen this.  You've got to explain what you're |
| 02:56 | 10 | talking about. |
| 02:56 | 11 | MR. LISBOA:  I'm sorry, Judge. |
| 02:56 | 12 | THE COURT:  What hallway are you talking about? |
| 02:56 | 13 | MR. LISBOA:  So it appears that this picture depicts |
| 02:56 | 14 | Victim Number 1, who is standing in a hallway which is inside |
| 02:56 | 15 | of the apartment. |
| 02:56 | 16 | THE COURT:  I don't know that.  That's not been the |
| 02:56 | 17 | testimony from the witness as to where this was taken. |
| 02:56 | 18 | MR. LISBOA:  Well, I'm just explaining the offer of |
| 02:56 | 19 | the -- the objection, Judge. |
| 02:56 | 20 | THE COURT:  Okay. |
| 02:56 | 21 | MR. LISBOA:  But the objection would be he can't |
| 02:56 | 22 | authenticate this photograph because he didn't take it, can't |
| 02:56 | 23 | explain why the shoulder is hanging off the edge of the |
| 02:56 | 24 | photograph.  And our position is there is something missing |
| 02:56 | 25 | off of the wall in the photograph. |

| | | |
|---|---|---|
| 02:56 | 1 | THE COURT: Well, I don't know that that's a border |
| 02:56 | 2 | on the right of the photograph or that's in the picture itself |
| 02:56 | 3 | as a molding around the door. I have no idea what that is. |
| 02:56 | 4 | She may be standing in front of a molding. All I know is the |
| 02:56 | 5 | witness said it looks like the way she looked on the day of |
| 02:56 | 6 | the search, and that's all he needs to say to authenticate |
| 02:56 | 7 | this picture. |
| 02:56 | 8 | Now, you can certainly cross-examine, and you can |
| 02:56 | 9 | argue to the jury that they shouldn't give any credibility or |
| 02:57 | 10 | credence to this because of the factors you've just mentioned, |
| 02:57 | 11 | but he has established the minimum requirements for |
| 02:57 | 12 | authenticity. |
| 02:57 | 13 | I'm going to overrule the objection and admit that |
| 02:57 | 14 | into evidence. |
| 02:57 | 15 | (GOVERNMENT EXHIBIT 310 WAS RECEIVED IN EVIDENCE.) |
| 02:57 | 16 | THE COURT: Let's take a break for ten minutes. It's |
| 02:57 | 17 | time for our second break anyway. We get back in ten minutes, |
| 02:57 | 18 | then we will run through to 2:00. Thank you. |
| 02:57 | 19 | (A recess was taken at 11:55 a.m.) |
| 03:17 | 20 | THE COURT: Is everybody ready? |
| 03:17 | 21 | MS. OSWALD: Yes, your Honor. |
| 03:18 | 22 | THE COURT: I want to make sure that defense counsel |
| 03:18 | 23 | understands that I'm not foreclosing them from impugning the |
| 03:18 | 24 | integrity of this document. I'm just finding that it's the |
| 03:18 | 25 | minimum necessary to authenticate. You can certainly argue to |

| | | |
|---|---|---|
| 03:18 | 1 | the jury that there's something wrong with the document.  And |
| 03:18 | 2 | it's up to the jury to determine whether they want to accept |
| 03:18 | 3 | it or not, depending on the evidence.  But the only ruling I'm |
| 03:18 | 4 | making is that the minimum has been met for authenticity for |
| 03:18 | 5 | this photograph. |
| 03:18 | 6 | All right, let's get the jury out and we'll continue. |
| 03:18 | 7 | (Brief pause) |
| 03:19 | 8 | THE COURT:  Mr. Macurdy, was this 310, this picture? |
| 03:19 | 9 | MR. MACURDY:  Yes, your Honor. |
| 03:19 | 10 | THE COURT:  All right. |
| 03:19 | 11 | THE DEPUTY COURT CLERK:  All rise. |
| 03:19 | 12 | (Jury enters the courtroom 12:20 p.m.) |
| 03:19 | 13 | THE COURT:  Ladies and gentlemen, have a seat.  We |
| 03:19 | 14 | had a little technical glitch, but we got it fixed. |
| 03:19 | 15 | Exhibit 310 is received in evidence and it may be displayed at |
| 03:19 | 16 | this time if you'd like. |
| 03:19 | 17 | (GOVERNMENT EXHIBIT 310 WAS RECEIVED IN EVIDENCE) |
| 03:19 | 18 | MR. MACURDY:  Thank you, your Honor. |
| 03:19 | 19 | BY MR. MACURDY: |
| 03:19 | 20 | Q.  Special Agent Benwell, I asked you previously what |
| 03:19 | 21 | individuals were present in 522 Teel when you went inside the |
| 03:20 | 22 | house.  Do recall that? |
| 03:20 | 23 | A.  Yes. |
| 03:20 | 24 | Q.  And once again, could you tell the jury who was present |
| 03:20 | 25 | inside that home? |

03:20    1    A.    It was Mary and the defendant's three children.

03:20    2    Q.    Okay.  Now, we've got Exhibit 310 up on the screen.  Do

03:20    3    you recognize the person in that picture?

03:20    4    A.    Yes.

03:20    5    Q.    And who is that?

03:20    6    A.    That's Mary.

03:20    7    Q.    Okay.  Did you take this picture?

03:20    8    A.    No, I did not.

03:20    9    Q.    Okay.  Were you present when this picture was taken?

03:20    10    A.    I was, I was in, I was in the house.

03:20    11    Q.    Okay.

03:20    12    A.    When it was taken.

03:20    13    Q.    Do you recognize, the -- did you recognize the

03:20    14    surroundings of the picture?  What are they?

03:20    15    A.    Yes, it appears to be taken from 522 Teel Plaza.

03:20    16    Q.    Okay.  Now, Agent, when you went inside the home and

03:20    17    found Mary there, what actions were taken with respect to

03:20    18    Mary?

03:20    19    A.    Well, we, we delayed the initial searching because the

03:21    20    children were still there.  They were still getting ready for

03:21    21    school.  So, we, we delayed and we allowed Mary to, to take

03:21    22    the children to the bus stop.

03:21    23    Q.    Okay.  And what happened after the children were taken to

03:21    24    the bus stop?

03:21    25    A.    Then we initiated the search, which we begin by labeling

| 03:21 | 1 | each room of the house, we take photographs, and we do a |
| 03:21 | 2 | sketch of the entire residence. |
| 03:21 | 3 | Q.   Now, when you were inside the home, did you notice |
| 03:21 | 4 | anything that was out the ordinary inside the home? |
| 03:21 | 5 | A.   Yes.  There was a bed located in the kitchen. |
| 03:21 | 6 | Q.   You mentioned a diagram.  Was there a diagram of the home |
| 03:21 | 7 | prepared in this case? |
| 03:21 | 8 | A.   Yes. |
| 03:21 | 9 | Q.   And is that sort of Homeland Security standard practice |
| 03:21 | 10 | during a search warrant? |
| 03:21 | 11 | A.   Yes. |
| 03:21 | 12 | MR. MACURDY:  Miss Reed, can we pull up just for |
| 03:22 | 13 | Agent Benwell Exhibit 107? |
| 03:22 | 14 | THE COURT:  Any objection to 107? |
| 03:22 | 15 | MR. LISBOA:  It's not if this witness offered that |
| 03:22 | 16 | document. |
| 03:22 | 17 | THE COURT:  Is this a document you prepared? |
| 03:22 | 18 | THE WITNESS:  No, I didn't. |
| 03:22 | 19 | THE COURT:  Who prepared it? |
| 03:22 | 20 | THE WITNESS:  It was prepared by Special Agent |
| 03:22 | 21 | Vanderhoff. |
| 03:22 | 22 | THE COURT:  Does it accurately depict the rooms that |
| 03:22 | 23 | you saw that day? |
| 03:22 | 24 | THE WITNESS:  Yes, it does. |
| 03:22 | 25 | THE COURT:  Overruled.  It may be admitted, 107. |

| | | |
|---|---|---|
| 03:22 | 1 | (GOVERNMENT EXHIBIT 107 WAS RECEIVED IN EVIDENCE) |
| 03:22 | 2 | THE COURT:  You may display it. |
| 03:22 | 3 | MR. MACURDY:  Thank you, your Honor. |
| 03:22 | 4 | BY MR. MACURDY: |
| 03:22 | 5 | Q.   Special Agent Benwell, how many pages is this document? |
| 03:22 | 6 | A.   It's two pages. |
| 03:22 | 7 | Q.   Okay.  And what is depicted on this page right now that |
| 03:22 | 8 | we're looking at? |
| 03:22 | 9 | A.   That's a sketch or a diagram of the first floor of 522 |
| 03:23 | 10 | Teel Plaza. |
| 03:23 | 11 | Q.   Okay.  Now, I'm circling an area in front of the drawing. |
| 03:23 | 12 | Do you see that circle that I made, or half circle? |
| 03:23 | 13 | A.   Yes. |
| 03:23 | 14 | Q.   And what portion of the apartment is that? |
| 03:23 | 15 | A.   That's the front door. |
| 03:23 | 16 | Q.   Okay.  Now, when you walk in the front door, just on a |
| 03:23 | 17 | general level, what's to your right when you walk in? |
| 03:23 | 18 | A.   To your right when you walk in there's a step and then |
| 03:23 | 19 | there's the living room, a television, and a door that leads |
| 03:23 | 20 | to the outdoor patio. |
| 03:23 | 21 | Q.   Okay.  And what room is straight ahead of you when you |
| 03:23 | 22 | walk in? |
| 03:23 | 23 | A.   What we would classify as a dining room.  There was a |
| 03:23 | 24 | dining room table, so we called that the dining room. |
| 03:23 | 25 | Q.   Okay.  And to the left, what room is it if you walk to |

03:23    1    the left in the first floor?

03:23    2    A.    It's the kitchen.

03:23    3    Q.    Okay.  Now, you mentioned a bed.  Now, where was the bed

03:23    4    located?

03:23    5    A.    The bed was located in the corner of the kitchen.

03:24    6    Q.    Okay.  And the top left corner of that photograph, is

03:24    7    that where you see the labeling "bed," is that what you're

03:24    8    referring to, Special Agent Benwell?

03:24    9    A.    Yes.

03:24    10            MR. MACURDY:  Okay.  Miss Reed, if you go to the

03:24    11    second page?

03:24    12    BY MR. MACURDY:

03:24    13    Q.    Now, what does this depict in the second page of

03:24    14    Exhibit 107?

03:24    15    A.    It depicts the second floor.

03:24    16    Q.    And how does one get from the first floor to the second

03:24    17    floor?

03:24    18    A.    You walk up a flight of steps.

03:24    19    Q.    And what is, what room is to your left when you walk up

03:24    20    the stairs of 522 Teel?

03:24    21    A.    It's the boys' bedroom.

03:24    22    Q.    Okay.  And how many beds were in that bedroom?

03:24    23    A.    There were three beds.

03:24    24    Q.    Now, do you see the labeling "victim's clothing" on

03:24    25    there?

03:24    1    A.    Yes, I do.

03:25    2    Q.    And what does that depict or refer to?

03:25    3    A.    That referred to a white cabinet that was located in the

03:25    4    middle of the boys' bedroom.

03:25    5    Q.    And what was inside that?

03:25    6    A.    It consisted of the victim, Mary's clothing and personal

03:25    7    belongings.

03:25    8    Q.    What room is to the right when you come off the top of

03:25    9    the stairs?

03:25    10    A.    The master bedroom.

03:25    11    Q.    Okay.    Now, how many bathrooms are up on the second floor

03:25    12    of 522 Teel?

03:25    13    A.    There are two bathrooms.

03:25    14         MR. MACURDY:    And Miss Reed, if you go back to the

03:25    15    first page.

03:25    16    BY MR. MACURDY:

03:25    17    Q.    How many bathrooms were on the first floor of 522 Teel?

03:25    18    A.    One bathroom.

03:25    19         MR. MACURDY:    Miss Reed, if we can pull up

03:25    20    Exhibit 307.5?

03:26    21         THE COURT:    Any objection?

03:26    22         MR. LISBOA:    None, Judge.

03:26    23         THE COURT:    307.5 is received in evidence.

03:26    24    It may be displayed.

03:26    25    (GOVERNMENT EXHIBIT 307.5 WAS RECEIVED IN EVIDENCE)

| 03:26 | 1 | BY MR. MACURDY: |
|---|---|---|
| 03:26 | 2 | Q.   What do we see in this picture, Special Agent? |
| 03:26 | 3 | A.   That's the living room at 522 Teel Plaza. |
| 03:26 | 4 | Q.   Okay.  And which floor is that on again? |
| 03:26 | 5 | A.   It's on the first floor. |
| 03:26 | 6 |      MR. MACURDY:  Miss Reed, if you could show |
| 03:26 | 7 | Exhibit 307.8? |
| 03:26 | 8 |      THE COURT:  Any objection to 307.8? |
| 03:26 | 9 |      MR. LISBOA:  None, Judge. |
| 03:26 | 10 |      THE COURT:   307.8 is received in evidence and may be |
| 03:26 | 11 | displayed. |
| 03:26 | 12 | (GOVERNMENT EXHIBIT 307.8 WAS RECEIVED IN EVIDENCE) |
| 03:26 | 13 | BY MR. MACURDY: |
| 03:26 | 14 | Q.   What's in 307.8, Special Agent? |
| 03:26 | 15 | A.   That's the dining room table. |
| 03:26 | 16 | Q.   Okay.  And in the center of the photo, where are the two |
| 03:27 | 17 | hallways, where do those two lead to, or the two doorways? |
| 03:27 | 18 | A.   One leads to the bathroom.  And I believe that's a closet |
| 03:27 | 19 | to -- on the, it would be the door on the left. |
| 03:27 | 20 | Q.   Okay.  And what -- I'm circling, you see my circle in |
| 03:27 | 21 | that? |
| 03:27 | 22 | A.   Okay. |
| 03:27 | 23 | Q.   And what's through that entryway? |
| 03:27 | 24 | A.   That's the kitchen. |
| 03:27 | 25 | Q.   Okay. |

| | | |
|---|---|---|
| 03:27 | 1 | MR. MACURDY:  Miss Reed, if you could bring up |
| 03:27 | 2 | 307.10? |
| 03:27 | 3 | THE COURT:  Any objection? |
| 03:27 | 4 | MR. LISBOA:  None, Judge. |
| 03:27 | 5 | THE COURT:  307.10 is received in evidence.  You may |
| 03:27 | 6 | display it. |
| 03:27 | 7 | (GOVERNMENT EXHIBIT 307.10 WAS RECEIVED IN EVIDENCE) |
| 03:27 | 8 | BY MR. MACURDY: |
| 03:27 | 9 | Q.  What's in that picture, Special Agent? |
| 03:28 | 10 | A.  That's the first floor bathroom. |
| 03:28 | 11 | MR. MACURDY:  307.11? |
| 03:28 | 12 | THE COURT:  Any objection to 307.11? |
| 03:28 | 13 | MR. LISBOA:  No objection. |
| 03:28 | 14 | THE COURT:  307.11 is received in evidence and may be |
| 03:28 | 15 | displayed. |
| 03:28 | 16 | (GOVERNMENT EXHIBIT 307.11 WAS RECEIVED IN EVIDENCE) |
| 03:28 | 17 | BY MR. MACURDY: |
| 03:28 | 18 | Q.  Special Agent, what is depicted in 307.11? |
| 03:28 | 19 | A.  That's another picture of the bathroom. |
| 03:28 | 20 | Q.  On which floor? |
| 03:28 | 21 | A.  The first floor bathroom. |
| 03:28 | 22 | Q.  Does that bathroom have a shower in it? |
| 03:28 | 23 | A.  I don't recall. |
| 03:28 | 24 | Q.  Did you see shower in either of the -- |
| 03:28 | 25 | A.  No, I didn't see a shower. |

| | | |
|---|---|---|
| 03:28 | 1 | Q.  307.11 or 307.10? |
| 03:29 | 2 | A.  No. |
| 03:29 | 3 | MR. MACURDY:  Miss Reed, if you would pull up 307.49? |
| 03:29 | 4 | THE COURT:  Any objection to 307.47? |
| 03:29 | 5 | MR. LISBOA:  None, Judge. |
| 03:29 | 6 | THE COURT:  307.47 is received in evidence and may be |
| 03:29 | 7 | displayed. |
| 03:29 | 8 | (GOVERNMENT EXHIBIT 307.47 WAS RECEIVED IN EVIDENCE) |
| 03:29 | 9 | BY MR. MACURDY: |
| 03:29 | 10 | Q.  Special Agent, what is depicted in 307.47? |
| 03:29 | 11 | A.  That's a storage room or pantry located on the first |
| 03:29 | 12 | floor of 522 Teel. |
| 03:29 | 13 | MR. MACURDY:  Miss Reed, could you zoom in on the |
| 03:29 | 14 | second shelf from the top there? |
| 03:29 | 15 | BY MR. MACURDY: |
| 03:29 | 16 | Q.  Do you see that zoomed in area, Special Agent? |
| 03:29 | 17 | A.  Yes. |
| 03:29 | 18 | Q.  Do you see the material that has some pinkish on it? |
| 03:29 | 19 | A.  Excuse me.  Yes. |
| 03:29 | 20 | Q.  And what was that? |
| 03:29 | 21 | A.  That's a toothbrush and toothpaste. |
| 03:30 | 22 | Q.  And what -- |
| 03:30 | 23 | MR. MACURDY:  You could zoom back out, Miss Reed. |
| 03:30 | 24 | BY MR. MACURDY: |
| 03:30 | 25 | Q.  The rest of these materials on the shelving, what do they |

03:30    1    appear to be?

03:30    2    A.    They appear to be regular kitchen appliances, pots and

03:30    3    pans.

03:30    4            MR. MACURDY:  Miss Reed, if you bring up 307.15?

03:30    5            THE COURT:  307.15, any objections?

03:30    6            MR. LISBOA:  None.

03:30    7            THE COURT:  307.15 is received in evidence.  You may

03:30    8    display that.

03:30    9    (GOVERNMENT EXHIBIT 307.15 WAS RECEIVED IN EVIDENCE)

03:30    10   Q.    Special Agent, what's in 307.15?

03:30    11   A.    That's the kitchen.

03:30    12           MR. MACURDY:  Miss Reed, if you could pull up 307.12?

03:31    13           THE COURT:  Any objection to 307.12?

03:31    14           MR. LISBOA:  No.

03:31    15           THE COURT:  307.12 is received in evidence.  You may

03:31    16   display that.

03:31    17   (GOVERNMENT EXHIBIT 307.12 WAS RECEIVED IN EVIDENCE)

03:31    18   BY MR. MACURDY:

03:31    19   Q.    What are we looking at here, Special Agent?

03:31    20   A.    That's another view of the kitchen with the bed located

03:31    21   in the right corner of the photo.

03:31    22           MR. MACURDY:  307.45, Miss Reed?

03:31    23           THE COURT:  Any objection to 307.45?

03:31    24           MR. LISBOA:  None.

03:31    25           THE COURT:  It's received in evidence and may be

| | | |
|---|---|---|
| 03:31 | 1 | displayed. |
| 03:31 | 2 | (GOVERNMENT EXHIBIT 307.45 WAS RECEIVED IN EVIDENCE) |
| 03:31 | 3 | BY MR. MACURDY: |
| 03:32 | 4 | Q.  Special Agent, what's in 307.45? |
| 03:32 | 5 | A.  That's another angle of the kitchen. |
| 03:32 | 6 | Q.  Do you see the bed depicted in that picture? |
| 03:32 | 7 | A.  Yes, with the bed located in the left corner. |
| 03:32 | 8 | Q.  And what's the appliance at the foot of the bed? |
| 03:32 | 9 | A.  It's a water cooler. |
| 03:32 | 10 | MR. MACURDY:  307.41, Miss Reed? |
| 03:32 | 11 | THE COURT:  Any objection to 307.41? |
| 03:32 | 12 | MR. LISBOA:  None. |
| 03:32 | 13 | THE COURT:  It's received in evidence.  You may |
| 03:32 | 14 | display that. |
| 03:32 | 15 | (GOVERNMENT EXHIBIT 307.41 WAS RECEIVED IN EVIDENCE) |
| 03:32 | 16 | BY MR. MACURDY: |
| 03:32 | 17 | Q.  What's in 307.41, Special Agent? |
| 03:32 | 18 | A.  That's the picture of the bed that's located in the |
| 03:32 | 19 | kitchen on the first floor of 522 Teel Plaza. |
| 03:32 | 20 | Q.  Now, on the right side of the picture you see some black |
| 03:33 | 21 | in 307.41? |
| 03:33 | 22 | A.  Yes. |
| 03:33 | 23 | Q.  What kind appliance is that? |
| 03:33 | 24 | A.  A refrigerator. |
| 03:33 | 25 | MR. MACURDY:  Miss Reed, 307.43? |

| | | |
|---|---|---|
| 03:33 | 1 | THE COURT:  Any objection to 307.43? |
| 03:33 | 2 | MR. LISBOA:  None, Judge. |
| 03:33 | 3 | THE COURT:  Received in evidence.  You may display |
| 03:33 | 4 | it. |
| 03:33 | 5 | (GOVERNMENT EXHIBIT 307.43 WAS RECEIVED IN EVIDENCE) |
| 03:33 | 6 | BY MR. MACURDY: |
| 03:33 | 7 | Q.   What's in 307.43? |
| 03:33 | 8 | A.   That's another angle of the kitchen with the victim's bed |
| 03:33 | 9 | and the water cooler. |
| 03:33 | 10 | MR. LISBOA:  Objection as to hearsay.  Can I be heard |
| 03:33 | 11 | at sidebar, Judge? |
| 03:33 | 12 | THE COURT:  Sure. |
| 03:33 | 13 | (Sidebar conference) |
| 03:34 | 14 | THE COURT:  Okay. |
| 03:34 | 15 | MR. LISBOA:  Judge, the objection is as to hearsay, |
| 03:34 | 16 | and I would respectfully request the Court to strike the last |
| 03:34 | 17 | answer. |
| 03:34 | 18 | THE COURT:  What's the out-of-court statement that |
| 03:34 | 19 | you're objecting to? |
| 03:34 | 20 | MR. LISBOA:  The out-of-court statement rather that |
| 03:34 | 21 | this is the victim's bed. |
| 03:34 | 22 | THE COURT:  It's out of court?  It's said in court. |
| 03:34 | 23 | MR. LISBOA:  I know, but how would he know that |
| 03:34 | 24 | unless someone told him that.  So -- |
| 03:34 | 25 | THE COURT:  Really? |

03:34    1          MR. LISBOA:  Yes.

03:34    2          THE COURT:  Everything you know, everything I know,

03:34    3   everything he knows he learned as a result of hearsay.

03:34    4   Teachers, movies, newspapers, news.  So you mean I cannot go

03:34    5   into court and testify about anything that I know because I

03:34    6   learned it from a hearsay source?  Is that really the rule?

03:34    7          MR. LISBOA:  It's being offered for the truth of what

03:34    8   it asserts.  The fact that the bed, which is a fact in this

03:34    9   case which the government is relying upon to show that somehow

03:34   10   Mary is being enslaved and otherwise being factors is

03:35   11   certainly is hearsay.  That was a door.  So my issue is that

03:35   12   this is a critical fact, and unless he can testify that he

03:35   13   personally saw Mary in that bed, his basis of information has

03:35   14   to be from hearsay, either from Mary herself or from some

03:35   15   other report that he read.  And quite frankly, I didn't think

03:35   16   that of a diagram which is the victim's bed.  Well, so, that's

03:35   17   also leading.

03:35   18          MR. KOVIC:  It's fact.  No evidence.

03:35   19          MR. LISBOA:  Mary can testify it's her bed.  This

03:35   20   information is hearsay.  It's a critical fact.

03:35   21          THE COURT:  Well, it's not hearsay because there's no

03:35   22   out-of-court statement being asserted here.  He said that's

03:35   23   her bed.  He didn't say she said it was her bed or somebody

03:35   24   said.  It's in court.  That's her bed.  Your objection on the

03:35   25   basis of hearsay is overruled.  Just doesn't meet the rule.

| | | |
|---|---|---|
| 03:35 | 1 | If you have an objection on some other basis, I'll hear that. |
| 03:35 | 2 | MR. LISBOA:  No. |
| 03:35 | 3 | THE COURT:  It's not hearsay. |
| 03:36 | 4 | MR. KOVIC:  I object. |
| 03:36 | 5 | THE COURT:  One at a time.  I deal with one lawyer |
| 03:36 | 6 | for one defendant at a time. |
| 03:36 | 7 | MR. KOVIC:  Okay. |
| 03:36 | 8 | THE COURT:  All right.  Thank you. |
| 03:36 | 9 | (Sidebar concluded) |
| 03:36 | 10 | THE COURT:  307.4 is received in evidence. |
| 03:36 | 11 | (GOVERNMENT EXHIBIT 307.4 WAS RECEIVED IN EVIDENCE) |
| 03:36 | 12 | BY MR. MACURDY: |
| 03:36 | 13 | Q.  Special Agent, again, what items do you see at the foot |
| 03:36 | 14 | of that bed? |
| 03:36 | 15 | A.  There's the water cooler.  And then there's a shelf with, |
| 03:36 | 16 | looks like cereal, other, hum, kitchen accessories. |
| 03:36 | 17 | Q.  For the record, that's Exhibit 307.43. |
| 03:37 | 18 | MR. MACURDY:  Miss Reed, if you could pull up 307.18? |
| 03:37 | 19 | THE COURT:  Any objection to 307.18? |
| 03:37 | 20 | MR. LISBOA:  None, Judge. |
| 03:37 | 21 | THE COURT:  It's received in evidence and you may |
| 03:37 | 22 | display that. |
| 03:37 | 23 | (GOVERNMENT EXHIBIT 307.18 WAS RECEIVED IN EVIDENCE) |
| 03:37 | 24 | BY MR. MACURDY: |
| 03:37 | 25 | Q.  What's in Exhibit 307.18? |

03:37  1   A.   It's a shelf located in a closet on the first floor of

03:37  2   522 Teel Plaza.

03:37  3   Q.   And what are the materials on the shelving in

03:37  4   Exhibit 307.18?

03:37  5   A.   It appears to be medication.

03:37  6        MR. MACURDY:  Miss Reed, if you could pull up 307.23?

03:38  7        THE COURT:  Any objection to .23?

03:38  8        MR. LISBOA:  No, Judge.

03:38  9        THE COURT:  307.23 is received and may be displayed.

03:38  10  (GOVERNMENT EXHIBIT 307.23 WAS RECEIVED IN EVIDENCE)

03:38  11  BY MR. MACURDY:

03:38  12  Q.   Special Agent, what floor are we looking at in 307.23?

03:38  13  A.   That's the second floor.

03:38  14  Q.   Okay.  And what room is this on the second floor in

03:38  15  307.23?

03:38  16  A.   That's the children's bedroom on the second floor.

03:38  17  Q.   And once again, how many beds are in this bedroom?

03:38  18  A.   Three beds.

03:38  19  Q.   I'm going to circle for you the sort of center left of

03:38  20  the photograph on 307.23.  What's in the center left of that

03:38  21  photograph?

03:38  22  A.   That's medical equipment.

03:38  23       MR. MACURDY:  Miss Reed, bring up 307.24?

03:39  24       THE COURT:  Any objection to 307.24?

03:39  25       MR. LISBOA:  No, Judge.

| | | |
|---|---|---|
| 03:39 | 1 | THE COURT:  Received in evidence.  You may display |
| 03:39 | 2 | it. |
| 03:39 | 3 | (GOVERNMENT EXHIBIT 307.24 WAS RECEIVED IN EVIDENCE) |
| 03:39 | 4 | BY MR. MACURDY: |
| 03:39 | 5 | Q.   What's in 307.24, Special Agent? |
| 03:39 | 6 | A.   That's another angle of the children's bedroom on the |
| 03:39 | 7 | second floor. |
| 03:39 | 8 | Q.   Circling the center of the photo, center middle.  What's |
| 03:39 | 9 | in the center middle of 307.24? |
| 03:39 | 10 | A.   That's the same medical equipment that was present in the |
| 03:39 | 11 | previous photo. |
| 03:39 | 12 | MS. OSWALD:  Miss Reed, if you could pull up 307.25? |
| 03:39 | 13 | THE COURT:  Any objection? |
| 03:39 | 14 | MR. LISBOA:  None, Judge. |
| 03:39 | 15 | THE COURT:  .25 is received in evidence, may be |
| 03:39 | 16 | displayed. |
| 03:39 | 17 | (GOVERNMENT EXHIBIT 307.25 WAS RECEIVED IN EVIDENCE) |
| 03:39 | 18 | BY MR. MACURDY: |
| 03:40 | 19 | Q.   What's in 307.25? |
| 03:40 | 20 | A.   That's another angle of the children's bedroom with the, |
| 03:40 | 21 | in the left, in the left side of the photo you can see a white |
| 03:40 | 22 | cabinet. |
| 03:40 | 23 | Q.   Circling the left side of the photo.  Is that the white |
| 03:40 | 24 | cabinet you're mentioning? |
| 03:40 | 25 | A.   Yes, it is. |

| | | |
|---|---|---|
| 03:40 | 1 | Q.  And what kind of materials -- was that white cabinet |
| 03:40 | 2 | searched? |
| 03:40 | 3 | A.  Yes, it was. |
| 03:40 | 4 | Q.  What kind of materials were found inside that white |
| 03:40 | 5 | cabinet? |
| 03:40 | 6 | A.  It consisted of clothing and belongings of Mary's. |
| 03:40 | 7 | MR. LISBOA:  Objection as to hearsay, facts not in |
| 03:40 | 8 | evidence, Judge. |
| 03:40 | 9 | THE COURT:  Overruled for the same reason. |
| 03:40 | 10 | MR. MACURDY:  Miss Reed, if you could pull up 307.27? |
| 03:40 | 11 | THE COURT:  Any objection to .27? |
| 03:41 | 12 | MR. LISBOA:  None, Judge. |
| 03:41 | 13 | THE COURT:  It's received and may be displayed. |
| 03:41 | 14 | (GOVERNMENT EXHIBIT 307.27 WAS RECEIVED IN EVIDENCE) |
| 03:41 | 15 | BY MR. MACURDY: |
| 03:41 | 16 | Q.  What's that a picture of in 307.27, Special Agent? |
| 03:41 | 17 | A.  That's a picture of the bathroom located in the |
| 03:41 | 18 | children's bedroom. |
| 03:41 | 19 | MR. MACURDY:  Miss Reed, could you zoom in on the |
| 03:41 | 20 | sink part of the portion of that bedroom -- that bathroom, I'm |
| 03:41 | 21 | sorry. |
| 03:41 | 22 | BY MR. MACURDY: |
| 03:41 | 23 | Q.  Special Agent, how many toothbrushes do you see in the |
| 03:41 | 24 | green cup on that photograph? |
| 03:41 | 25 | A.  There are three toothbrushes. |

| | | |
|---|---|---|
| 03:41 | 1 | MR. MACURDY:  Miss Reed, if you could pull up 307.28? |
| 03:41 | 2 | THE COURT:  Any objection to .28? |
| 03:41 | 3 | MR. LISBOA:  None, Judge. |
| 03:41 | 4 | THE COURT:  .28 is received and may be displayed. |
| 03:41 | 5 | (GOVERNMENT EXHIBIT 307.28 WAS RECEIVED IN EVIDENCE) |
| 03:41 | 6 | BY MR. MACURDY: |
| 03:42 | 7 | Q.   What room is 307.28, Special Agent? |
| 03:42 | 8 | A.   That's the bathroom located in the children's bedroom. |
| 03:42 | 9 | MR. MACURDY:  Miss Reed, if you could pull up 307.72? |
| 03:42 | 10 | THE COURT:  Any objection to .72? |
| 03:42 | 11 | MR. LISBOA:  None, Judge. |
| 03:42 | 12 | THE COURT:  Received and may be displayed. |
| 03:42 | 13 | (GOVERNMENT EXHIBIT 307.72 WAS RECEIVED IN EVIDENCE) |
| 03:42 | 14 | BY MR. MACURDY: |
| 03:42 | 15 | Q.   Special Agent, what room are we looking at in 307.72? |
| 03:42 | 16 | A.   That's the closet located in the children's bedroom. |
| 03:42 | 17 | MR. MACURDY:  Miss Reed, if you could pull up 307.49? |
| 03:42 | 18 | THE COURT:  Any objection to .49? |
| 03:42 | 19 | MR. LISBOA:  None, Judge, but it's probably going to |
| 03:43 | 20 | be the same objection relative to testimony concerning the |
| 03:43 | 21 | contents. |
| 03:43 | 22 | THE COURT:  Well, if -- |
| 03:43 | 23 | MR. LISBOA:  But no objection to the photo. |
| 03:43 | 24 | THE COURT:  All right.  It's received and may be |
| 03:43 | 25 | displayed.  We'll see what the testimony is. |

| | | |
|---|---|---|
| 03:43 | 1 | (GOVERNMENT EXHIBIT 307.49 WAS RECEIVED IN EVIDENCE) |
| 03:43 | 2 | BY MR. MACURDY: |
| 03:43 | 3 | Q.   307.49, what are we looking at there? |
| 03:43 | 4 | A.   That's the interior of the white cabinet located in the |
| 03:43 | 5 | children's bedroom. |
| 03:43 | 6 | Q.   And Special Agent Benwell, whose belongings are inside |
| 03:43 | 7 | that cabinet? |
| 03:43 | 8 | MR. LISBOA:  Objection to hearsay. |
| 03:43 | 9 | THE COURT:  Overruled. |
| 03:43 | 10 | THE WITNESS:  Those are Mary's belongings. |
| 03:43 | 11 | MR. MACURDY:  307.50, Miss Reed? |
| 03:43 | 12 | THE COURT:  Any objection? |
| 03:43 | 13 | MR. LISBOA:  Judge, may I voir dire on this photo? |
| 03:43 | 14 | THE COURT:  Sure. |
| 03:43 | 15 | (VOIR DIRE EXAMINATION OF SPECIAL AGENT BENWELL BY |
| 03:43 | 16 | MR. LISBOA:) |
| 03:43 | 17 | Q.   Agent, with regard to this particular photo, 307.50, did |
| 03:44 | 18 | you take that photograph? |
| 03:44 | 19 | A.   I did not take the photograph. |
| 03:44 | 20 | Q.   Do you know who took the photograph? |
| 03:44 | 21 | A.   I believe I know who took the photograph. |
| 03:44 | 22 | Q.   Who would that be? |
| 03:44 | 23 | A.   That would be Special Agent Pedro Cruz. |
| 03:44 | 24 | Q.   Okay.  And with regard to, if I were to ask you that |
| 03:44 | 25 | question about any of the other photographs, you didn't take |

03:44    1   any photographs?

03:44    2   A.   No, I did not.

03:44    3   Q.   Including 307.52; is that right?

03:44    4   A.   That's correct.

03:44    5   Q.   Okay.  So with regard to what's depicted in 307.50, did

03:44    6   you have a conversation with Mary about the content of 307.50?

03:44    7   A.   No, I did not.

03:44    8   Q.   So, your understanding of this belongs to Mary or someone

03:44    9   else, where is that coming from?

03:44   10   A.   That's coming from the context and the contents of the

03:45   11   drawers in the cabinet.

03:45   12   Q.   Okay.  So just so I understand, you were able to tell by

03:45   13   looking at the clothing that that was Mary's style of clothing

03:45   14   as opposed to Miss Hunaity's style?

03:45   15   A.   Well, there were some documents that belonged to Mary,

03:45   16   and they weren't -- it was clothing that wasn't located in any

03:45   17   of other bedroom, it wasn't in the master bedroom.

03:45   18   Q.   Okay.  You did find clothing in the master bedroom; is

03:45   19   that right?

03:45   20   A.   Yes, I did.

03:45   21   Q.   And that was women's clothing?

03:45   22   A.   Yes.

03:45   23   Q.   Did you do a comparison between the sizes to see if there

03:45   24   was commingled sizes that two people may be sleeping in the

03:45   25   same bed?

03:45   1   A.   No, I did not do that comparison.

03:45   2        MR. LISBOA:  Just an objection as to hearsay with

03:45   3   regard to this photograph.

03:45   4        THE COURT:  Well, there's no out-of-court statement,

03:45   5   so by definition it can't be hearsay.  So I overrule it.

03:45   6   307.50 is admitted and may be displayed.

03:45   7   (GOVERNMENT EXHIBIT 307.50 WAS RECEIVED IN EVIDENCE)

03:45   8   (FURTHER DIRECT EXAMINATION OF SPECIAL AGENT BENWELL BY

03:45   9   MR. MACURDY:)

03:46   10  Q.   Special Agent Benwell, what piece of furniture are we

03:46   11  looking at in 307.50?

03:46   12  A.   That's the white cabinet located in the children's

03:46   13  bedroom.

03:46   14  Q.   And based on the investigation -- strike that.

03:46   15       MR. MACURDY:  307.51, Miss Reed?

03:46   16  BY MR. MACURDY:

03:46   17  Q.   Special Agent Benwell --

03:46   18       THE COURT:  Any objection to .51?

03:46   19       MR. LISBOA:  No, Judge.

03:46   20       THE COURT:  It's received in evidence, you may

03:46   21  display that.

03:46   22  (GOVERNMENT EXHIBIT 307.51 WAS RECEIVED IN EVIDENCE)

03:46   23  BY MR. MACURDY:

03:46   24  Q.   What piece of furniture are we looking at in 307.51?

03:47   25  A.   That's the middle drawer of the white cabinet located in

03:47    1    the children's bedroom.

03:47    2    Q.   Based on your investigation, did you have an

03:47    3    understanding of whose belongings were in this drawer?

03:47    4    A.   Yes, it was my understanding those were Mary's

03:47    5    belongings.

03:47    6           MR. MACURDY:  Exhibit 307.52, Miss Reed?

03:47    7           THE COURT:  Any objection to .52?

03:47    8           MR. LISBOA:  No, Judge.

03:47    9           THE COURT:  It's received in evidence, you may

03:47    10   display that.

03:47    11   (GOVERNMENT EXHIBIT 307.52 WAS RECEIVED IN EVIDENCE)

03:47    12   BY MR. MACURDY:

03:47    13   Q.   Agent Benwell, what are we looking at in 307.52?

03:47    14   A.   That's the bottom drawer of the white cabinet located in

03:47    15   the children's bedroom.

03:47    16   Q.   And based on your investigation did you have an

03:47    17   understanding whose belongings were in that drawer?

03:47    18   A.   Yes, it was my understanding that they were Mary's

03:47    19   belongings.

03:47    20          MR. MACURDY:  Miss Reed, 307.63?

03:48    21          THE COURT:  Any objection to .63?

03:48    22          MR. LISBOA:  No, Judge.

03:48    23          THE COURT:  .63 is in evidence and may be displayed.

03:48    24   (GOVERNMENT EXHIBIT 307.63 WAS RECEIVED IN EVIDENCE)

03:48    25   BY MR. MACURDY:

03:48    1    Q.   Special Agent Benwell, what are the items -- do you see

03:48    2    the items in 307.63?

03:48    3    A.   Yes.

03:48    4    Q.   And where were these items found in the home?

03:48    5    A.   These were located in the white cabinet in the boys'

03:48    6    bedroom on the second floor.

03:48    7            MR. MACURDY:  Miss Reed, 307.64?

03:48    8            THE COURT:  Any objection to .64?

03:48    9            MR. LISBOA:  If I can voir dire on that one, Judge.

03:48   10            THE COURT:  Sure.

03:48   11    (VOIR DIRE EXAMINATION OF SPECIAL AGENT BENWELL BY

03:48   12    MR. LISBOA:)

03:48   13    Q.   Agent, on 307.64, do you have that on the screen there?

03:48   14    A.   Yes.

03:48   15    Q.   Okay.  It depicts a green book and it looks like a Barbie

03:49   16    book; is that right?

03:49   17    A.   Yes.

03:49   18    Q.   And in that, the last exhibit that the Government just

03:49   19    showed you had a picture, I guess, of cash and a trophy?

03:49   20    A.   Yes.

03:49   21    Q.   Is that right?  And you can actually see the trophy, I

03:49   22    guess drawer or shelf underneath the top items in this

03:49   23    picture, 307.64?

03:49   24    A.   I'm, I don't follow.

03:49   25    Q.   Like if you looked at the last picture.

*United States District Court*
*District of New Jersey*

03:49    1    A.    Yes.

03:49    2            MR. LISBOA:   If Miss Reed could pull that last photo

03:49    3    up?

03:49    4    BY MR. LISBOA:

03:49    5    Q.    See that photo?

03:49    6    A.    Yes.

03:49    7    Q.    Okay.  Would you agree that part of this photograph you

03:49    8    can see in the Government's next exhibit?

03:49    9    A.    Can I see the photograph again?

03:50    10           MR. LISBOA:   Thank you, Miss Reed.

03:50    11    BY MR. LISBOA:

03:50    12    Q.    Now, taking a look at that Exhibit 307.64, can we agree

03:50    13    that you can see the trophy underneath?

03:50    14    A.    Yes.

03:50    15    Q.    Okay.  You can't see the money, though, in this picture?

03:50    16    A.    Yes.

03:50    17    Q.    And again, the prosecutor didn't ask you, but the money

03:50    18    and that trophy, which it looks like it's from a police

03:50    19    department, did you read that trophy?

03:50    20    A.    I did at the time.  I don't recall what it said.

03:50    21    Q.    Based upon your investigation, your understanding would

03:50    22    be that that trophy and the money is Mary's?

03:50    23    A.    Yes.

03:50    24    Q.    Okay.

03:50    25            MR. LISBOA:   Judge, no objection to that photo.

03:50    1          THE COURT:  All right, .64 is in evidence.  You may

03:50    2    display it.

03:50    3    (GOVERNMENT EXHIBIT 307.64 WAS RECEIVED IN EVIDENCE)

03:50    4    (FURTHER DIRECT EXAMINATION OF SPECIAL AGENT BENWELL BY

03:50    5    MR. MACURDY:)

03:51    6    Q.   What are looking at in 307.64, Special Agent?

03:51    7    A.   That's a photo of the contents of the white cabinet from

03:51    8    this second floor boys' bedroom.

03:51    9    Q.   All right.  And based on your investigation, contents of

03:51    10   that white dresser in the boys' bedroom, whose belongings were

03:51    11   those?

03:51    12   A.   They belonged to Mary.

03:51    13   Q.   Were Mary's belongings found anywhere else in the house?

03:51    14   A.   No, other than her toothbrush and toothpaste which were

03:51    15   located in the --

03:51    16          MR. LISBOA:  Objection as to hearsay, Judge.  Facts

03:51    17   not in evidence.

03:51    18          THE COURT:  Facts not in evidence?  That's the point

03:51    19   of the testimony, to put facts in evidence, isn't it?

03:51    20          MR. LISBOA:  His basis of knowledge as to the

03:51    21   toothbrushes, who they belonged to, Judge, would be hearsay.

03:51    22          THE COURT:  No, it's 701 opinion testimony, he only

03:51    23   needs a rational basis.  You can inquire as to what his

03:52    24   rational basis is.  Overruled.

03:52    25   BY MR. MACURDY:

03:52  1  Q.  Special Agent, I want to show you exhibit bag 109.

03:52  2      Special Agent, I'm approaching you with what's been

03:53  3  marked as Government Exhibit 110.  Would you take a look at

03:53  4  that?

03:53  5  A.  Yes.

03:53  6  Q.  Do you recognize that evidence bag?

03:53  7  A.  Yes.

03:53  8  Q.  And how do you recognize it?

03:53  9  A.  Hum, my name is on the bag.  And I recognize the contents

03:53  10  of the bag.

03:53  11  Q.  And the contents of that bag, where were they recovered

03:53  12  from, or where do they come from to get in that bag?

03:53  13  A.  They came from the white cabinet located in the boys'

03:53  14  bedroom.

03:53  15  Q.  And in preparation for your testimony today, have you

03:53  16  reviewed the contents of that bag?

03:53  17  A.  Yes.

03:53  18  Q.  And are they in the same or similar condition as when

03:53  19  they were recovered on September 18?

03:53  20  A.  Yes.

03:53  21  Q.  What are the contents of that bag?

03:54  22  A.  It consists of a passport application, and a translation

03:54  23  of a Sri Lankan birth certificate.

03:54  24  Q.  Now, were copies made of the papers in that bag?

03:54  25  A.  Yes.  Copies were made.

| | | |
|---|---|---|
| 03:54 | 1 | MR. MACURDY:  Miss Reed, if we could pull up Exhibit |
| 03:54 | 2 | 101. |
| 03:54 | 3 | THE COURT:  Are you moving 110 into evidence? |
| 03:54 | 4 | MR. MACURDY:  I'm not, your Honor. |
| 03:54 | 5 | THE COURT:  Thank you.  What do we have, 101, any |
| 03:54 | 6 | objection? |
| 03:54 | 7 | MR. LISBOA:  Judge, can I just see the last exhibit |
| 03:54 | 8 | that the Agent identified? |
| 03:54 | 9 | THE COURT:  The one up here? |
| 03:54 | 10 | MR. LISBOA:  Yes. |
| 03:54 | 11 | THE COURT:  Sure. |
| 03:54 | 12 | (Defense counsel approaches the witness stand) |
| 03:55 | 13 | THE COURT:  Any objection to 101? |
| 03:55 | 14 | MR. LISBOA:  No, Judge. |
| 03:55 | 15 | THE COURT:  101 is received in evidence.  You may |
| 03:55 | 16 | display that. |
| 03:55 | 17 | (GOVERNMENT EXHIBIT 101 WAS RECEIVED IN EVIDENCE) |
| 03:55 | 18 | BY MR. MACURDY: |
| 03:55 | 19 | Q.   Special Agent, Exhibit 101, what are we looking at here? |
| 03:55 | 20 | A.   It's an application for a Sri Lankan passport. |
| 03:55 | 21 | Q.   And is that an accurate copy of a page that you found, |
| 03:56 | 22 | recovered from within the evidence bag, Exhibit 110? |
| 03:56 | 23 | A.   Yes. |
| 03:56 | 24 | Q.   Marked for identification as 110. |
| 03:56 | 25 | And who's applying for a Sri Lankan passport in |

| | | |
|---|---|---|
| 03:56 | 1 | Exhibit 101? |
| 03:56 | 2 | A.   It's Sakunthala -- can I spell it out?  It's |
| 03:56 | 3 | S-A-K-U-N-T-H-A-L-A, T-H-A-L-A-H-I-T-I-Y-A. |
| 03:56 | 4 | Q.   And what is the address of that person that's marked on |
| 03:56 | 5 | line 7? |
| 03:57 | 6 | MR. MACURDY:  Miss Reed, if you could cull that part |
| 03:57 | 7 | out? |
| 03:57 | 8 | THE WITNESS:  It's 522 Teel Plaza, Secaucus, New |
| 03:57 | 9 | Jersey 07094. |
| 03:57 | 10 | MR. MACURDY:  Miss Reed, if you could pull up |
| 03:57 | 11 | Exhibit 102. |
| 03:57 | 12 | THE COURT:  Any objection to 102? |
| 03:57 | 13 | MR. LISBOA:  No, Judge. |
| 03:57 | 14 | THE COURT:  102 is received in evidence.  You may |
| 03:57 | 15 | display that. |
| 03:57 | 16 | (GOVERNMENT EXHIBIT 102 WAS RECEIVED IN EVIDENCE) |
| 03:57 | 17 | BY MR. MACURDY: |
| 03:57 | 18 | Q.   Special Agent Benwell, Exhibit 102 is a multipage |
| 03:57 | 19 | document.  Do you see that? |
| 03:57 | 20 | A.   Yes. |
| 03:57 | 21 | MR. MACURDY:  Miss Reed, could you flip through to |
| 03:57 | 22 | the second page? |
| 03:57 | 23 | BY MR. MACURDY: |
| 03:57 | 24 | Q.   What does the second page of Exhibit 102 state that it |
| 03:58 | 25 | is? |

| | | |
|---|---|---|
| 03:58 | 1 | MR. LISBOA:  Objection.  This is partially or |
| 03:58 | 2 | entirely in a foreign language.  I just object unless he |
| 03:58 | 3 | specifies what he's reading from, the exhibit's in. |
| 03:58 | 4 | THE COURT:  Page 2 of whatever this exhibit is.  I |
| 03:58 | 5 | don't even know what it is yet, nobody's told me.  Your |
| 03:58 | 6 | objection is it's in a foreign language? |
| 03:58 | 7 | MR. LISBOA:  My concern is I don't know if he's able |
| 03:58 | 8 | to translate.  That's my concern. |
| 03:58 | 9 | THE COURT:  I don't know what it says yet.  Let's ask |
| 03:58 | 10 | the question. |
| 03:58 | 11 | What's the question, counsel? |
| 03:58 | 12 | BY MR. MACURDY: |
| 03:58 | 13 | Q.  Special Agent Benwell, Exhibit 102, Page 2, what's the |
| 03:58 | 14 | titling at the top of that? |
| 03:58 | 15 | MR. MACURDY:  And Miss Reed, if you could cull the |
| 03:58 | 16 | first third of that page? |
| 03:58 | 17 | THE WITNESS:  It's Ibrahim Enterprises for |
| 03:58 | 18 | Translation and General Services.  Do you want me to continue? |
| 03:58 | 19 | BY MR. MACURDY: |
| 03:58 | 20 | Q.  Yeah, you can skip over to the next part.  Do you see the |
| 03:59 | 21 | line that begins Sri Lanka, what does that line say? |
| 03:59 | 22 | A.  Sri Lanka register of birth. |
| 03:59 | 23 | Q.  And the line after that? |
| 03:59 | 24 | A.  Births and deaths registration. |
| 03:59 | 25 | Q.  And what's the name in line 2 of this document? |

03:59    1    A.   I'll spell the name.  It's S-A-K-U-N-T-H-A-L-A.

03:59    2         MR. MACURDY:  Miss Reed, if you could put it on the

03:59    3    screen, could you highlight this last very bottom line of this

03:59    4    document, Exhibit 102?

03:59    5    BY MR. MACURDY:

03:59    6    Q.   Now, what does that last line read?

03:59    7    A.   It says, T-V, S-A-K-U-N-T-H-A-L-A, Certificate of Birth,

03:59    8    Department of Registrar General, 3410 E.

04:00    9    Q.   Once again, what part of the house was this document

04:00    10   found in?

04:00    11   A.   This was located in the white cabinet in the boys'

04:00    12   bedroom on the second floor.

04:00    13   Q.   Special Agent, I've placed another bag in front of you,

04:00    14   it's marked Exhibit 100.  Do you see that?

04:00    15   A.   Yes.

04:00    16   Q.   Do you recognize what's in Exhibit 100, or what is

04:00    17   Exhibit 100?

04:00    18   A.   Yes.

04:00    19   Q.   And where was that item recovered, or where does that

04:00    20   item come from?

04:00    21   A.   It came from the white cabinet located in the second

04:00    22   floor boys' bedroom.

04:00    23   Q.   What is that item?

04:00    24   A.   It's a Sri Lankan passport.

04:00    25   Q.   And is it in the same or similar condition -- have you

04:00   1  reviewed that in preparation for your testimony today?

04:00   2  A.   Yes.

04:00   3  Q.   Is it in the same or similar condition as when it was

04:00   4  recovered?

04:00   5  A.   Yes.

04:00   6  Q.   From the home?

04:00   7  A.   Yes.

04:00   8       MR. MACURDY:  Your Honor, I move to admit Exhibit 100

04:01   9  in evidence.

04:01   10      THE COURT:  Any objection to 100?

04:01   11      MR. LISBOA:  If I could voir dire, Judge?

04:01   12  (VOIR DIRE EXAMINATION OF SPECIAL AGENT BENWELL BY

04:01   13  MR. LISBOA:)

04:01   14  Q.   Agent, with regard to Exhibit 100, the passport, was

04:01   15  there a photograph taken of where it was found?

04:01   16  A.   I believe so.

04:01   17  Q.   But your understanding is that it was in the, what you

04:01   18  believe to be Mary's closet?

04:01   19  A.   Yes.

04:01   20  Q.   Okay.  So it wasn't in the boys' room -- strike that.

04:01   21       It was in her closet; is that right?

04:01   22  A.   It was in her, the white cabinet located in the boys'

04:01   23  bedroom.

04:01   24  Q.   Do you know which drawer it was in, or was it a --

04:01   25  A.   I don't recall which drawer it was in.

04:01    1    Q.    Okay.  But that Exhibit 100 wasn't found in any other

04:01    2    room; is that right?

04:01    3    A.    No.

04:01    4    Q.    Did it look like it was hidden when you found it?

04:01    5          MR. MACURDY:  Your Honor, I guess I would object.

04:02    6    I'm not sure what this has to do with the authenticity of the

04:02    7    exhibit.

04:02    8          MR. LISBOA:  I'll withdraw the question, Judge.

04:02    9          THE COURT:  Thank you.

04:02    10    BY MR. LISBOA:

04:02    11    Q.    But with regards to that particular passport, that was in

04:02    12    the same condition when you recovered it; is that right?

04:02    13    A.    Yes.

04:02    14          MR. LISBOA:  No objection, Judge.

04:02    15          THE COURT:  Exhibit 100 is received in evidence.

03:57    16    (GOVERNMENT EXHIBIT 100 WAS RECEIVED IN EVIDENCE)

03:57    17          MR. MACURDY:  Before we show that to the jury,

04:02    18    Ms. Reed, could you just bring it up 307.25 which is already

04:02    19    in evidence?

04:02    20    BY MR. MACURDY:

04:02    21          Now, with respect to Exhibit 100, the passport and the

04:02    22    pieces of paper, 101 and 102, where were those recovered in

04:02    23    the house in relation to what we see on Exhibit 307.25?

04:02    24    A.    They were in the white cabinet.

04:02    25    Q.    And where is that on Exhibit 307.25?

04:03    1    A.   That's on the left-hand side of the photograph.

04:03    2              MR. MACURDY:  Ms. Reed, could you pull up Exhibit

04:03    3    100.1?

04:03    4              THE COURT:  Any objection?

04:03    5              MR. LISBOA:  Well, Judge, I think Exhibit 100 is in.

04:03    6    That's the actual object.  So maybe this is just a separate

04:03    7    photograph of it.

04:03    8              THE COURT:  I don't know.  Is this a picture of the

04:03    9    passport?

04:03    10             MR. MACURDY:  Correct, your Honor.

04:03    11             THE COURT:  Okay.

04:03    12             MR. LISBOA:  I think the original exhibit is in

04:03    13   evidence, Judge.  I prefer that if we are looking at the

04:03    14   exhibit, that it be the actual one, not -- rather than a black

04:03    15   and white photograph of it.

04:03    16             THE COURT:  Is there some point to having this rather

04:03    17   than the actual exhibit?

04:03    18             MR. MACURDY:  Judge, it's easier to publish to the

04:03    19   jury.  I can publish both, your Honor.  It's just easier to

04:03    20   see the copy pages, just to show on the big screen.

04:03    21             THE COURT:  Oh, is that what you are going to do is

04:03    22   show the pages of the passport now on the screen?

04:03    23             MR. MACURDY:  Correct.

04:03    24             THE COURT:  I will overrule the objection.  100.1 is

04:04    25   received in evidence.

*United States District Court*
*District of New Jersey*

04:04    1          Do you have any other pages?

04:04    2    (GOVERNMENT EXHIBIT 100.1 WAS RECEIVED IN EVIDENCE.)

04:04    3          MR. MACURDY:  Yes, your Honor.  There is a five-page

04:04    4    document.

04:04    5          THE COURT:  .1, .2, .3, .4, and .5?

04:04    6          MR. MACURDY:  I believe it is 100.1, a five-page

04:04    7    document, your Honor.

04:04    8          THE COURT:  All right.

04:04    9          (Document was published.)

04:04    10   BY MR. MACURDY:

04:04    11   Q.  Special Agent Benwell, actually, could you take Exhibit

04:04    12   100 out of that bag and just show that, hold that up for the

04:04    13   jury?

04:04    14   A.  Do you want me to open the bag?

04:04    15   Q.  Yeah, if you just undo the tape that's right there.  If

04:04    16   you just step down and show the photo page.

04:05    17          THE COURT:  You can step down in front of the jury,

04:05    18   please.

04:05    19   BY MR. MACURDY:

04:05    20   Q.  Agent Benwell, you can step down.

04:05    21   A.  (Indicating.)

04:05    22          MR. LISBOA:  Judge, can we see it?

04:05    23          THE COURT:  Sure.  Let defense counsel see that,

04:05    24   please.

04:05    25          THE WITNESS:  (Complies.)

*United States District Court*
*District of New Jersey*

| 04:06 | 1 | MR. LISBOA:  Thank you. |
| 04:06 | 2 | BY MR. MACURDY: |
| 04:06 | 3 | Q.  Special Agent Benwell, I will grab that from you, put it |
| 04:06 | 4 | on the ELMO.  Zoom out a little bit. |
| 04:07 | 5 | Whose name is on that passport?  If you can see with |
| 04:07 | 6 | the glare? |
| 04:07 | 7 | A.  I'll spell it.  It's T-H-A-L-A-N-A-H-T-I-Y-A.  V-I- -- |
| 04:07 | 8 | V-I-T-H-A-N-A-L-A-G-E. |
| 04:08 | 9 | Q.  Okay.  And the other name? |
| 04:08 | 10 | A.  It's S-A-K-U-N-T-H-A-L-A. |
| 04:08 | 11 | Q.  And, again, what's the country of this passport? |
| 04:08 | 12 | A.  Sri Lanka. |
| 04:08 | 13 | Q.  I'll turn to Exhibit 100.1 and we will go through that. |
| 04:08 | 14 | Give this back to you. |
| 04:08 | 15 | Sir, you can just -- so again, Special Agent, what's |
| 04:08 | 16 | the relation of Exhibit 100.1 to Exhibit 100, the passport we |
| 04:09 | 17 | were just looking at? |
| 04:09 | 18 | A.  100.1 is a photocopy. |
| 04:09 | 19 | MR. MACURDY:  Okay.  Ms. Reed, if you could go to the |
| 04:09 | 20 | second page. |
| 04:09 | 21 | BY MR. MACURDY: |
| 04:09 | 22 | Q.  Is that the same page we were just looking at? |
| 04:09 | 23 | A.  Yes. |
| 04:09 | 24 | MR. MACURDY:  Third page, Ms. Reed. |
| 04:09 | 25 | Fourth page. |

| | | |
|---|---|---|
| 04:09 | 1 | BY MR. MACURDY: |
| 04:09 | 2 | Q.  And could you just read -- I will circle it for you. |
| 04:09 | 3 | Just read those dates? |
| 04:09 | 4 | A.  The dates are -- |
| 04:09 | 5 | Q.  That I have circled in the red? |
| 04:09 | 6 | A.  Sure. |
| 04:09 | 7 | Q.  -- in the middle of the second -- bottom half of that |
| 04:09 | 8 | document. |
| 04:09 | 9 | A.  April 6th, 2009; July 04, 2009. |
| 04:09 | 10 | MR. MACURDY:  And last page, Ms. Reed. |
| 04:09 | 11 | Could you just enhance that or enlarge that screen? |
| 04:10 | 12 | BY MR. MACURDY: |
| 04:10 | 13 | Q.  This is the fifth page of Exhibit 100.1.  Now, is the |
| 04:10 | 14 | name on this page of Exhibit 100.1 the same name you read |
| 04:10 | 15 | earlier -- |
| 04:10 | 16 | A.  Yes, it is. |
| 04:10 | 17 | Q.  -- from the passport? |
| 04:10 | 18 | And how does annotation that read? |
| 04:10 | 19 | A.  The -- it says, domestic employee of Mrs. Munira al Fares |
| 04:10 | 20 | and Mr. Hmoud Alhnaity, based in Amman, Jordan. |
| 04:10 | 21 | Q.  And what's the title of this document on the top left |
| 04:10 | 22 | corner? |
| 04:10 | 23 | A.  It's a visa. |
| 04:10 | 24 | MR. MACURDY:  All right.  Ms. Reed, if you could pull |
| 04:10 | 25 | up Exhibit 307.68. |

| | | |
|---|---|---|
| 04:10 | 1 | THE COURT:  Any objection to 307.6? |
| 04:11 | 2 | MR. LISBOA:  No, Judge. |
| 04:11 | 3 | THE COURT:  307.6 is received in evidence. |
| 04:11 | 4 | MR. MACURDY:  It's 68, your Honor. |
| 04:11 | 5 | THE COURT:  I'm sorry.  68, 307.68 is received in |
| 04:11 | 6 | evidence. |
| 04:11 | 7 | (GOVERNMENT EXHIBIT 307.68 WAS RECEIVED IN EVIDENCE.) |
| 04:11 | 8 | (Document was published.) |
| 04:11 | 9 | BY MR. MACURDY: |
| 04:11 | 10 | Q.   Now, what's in this picture, Special Agent Benwell? |
| 04:11 | 11 | A.   That's an HP Laptop computer with a power cord.  It was |
| 04:11 | 12 | located underneath the bed that was located in the kitchen. |
| 04:11 | 13 | Q.   And based on your investigation, who did that computer |
| 04:11 | 14 | belong to? |
| 04:11 | 15 | A.   It belonged to Mary. |
| 04:11 | 16 | MR. MACURDY:  Ms. Reed, Exhibit 307.29. |
| 04:11 | 17 | THE COURT:  Any objection to 307.29? |
| 04:12 | 18 | MR. LISBOA:  No, Judge. |
| 04:12 | 19 | THE COURT:  307.29 is received in evidence.  You may |
| 04:12 | 20 | display it. |
| 04:12 | 21 | (GOVERNMENT EXHIBIT 307.29 WAS RECEIVED IN EVIDENCE.) |
| 04:12 | 22 | (Document was published.) |
| 04:12 | 23 | BY MR. MACURDY: |
| 04:12 | 24 | Q.   Special Agent, what's 307.29 a picture of? |
| 04:12 | 25 | A.   That's the room located on the second floor.  We call it |

| | | |
|---|---|---|
| 04:12 | 1 | a study.  It had a desk, with a book shelf and a chair. |
| 04:12 | 2 | MR. MACURDY:  Ms. Reed, Exhibit 307.32. |
| 04:12 | 3 | THE COURT:  Any objection to .32? |
| 04:12 | 4 | MR. LISBOA:  No, Judge. |
| 04:12 | 5 | THE COURT:  307.32 is received in evidence and may be |
| 04:12 | 6 | displayed. |
| 04:12 | 7 | (GOVERNMENT EXHIBIT 307.32 WAS RECEIVED IN EVIDENCE.) |
| 04:12 | 8 | (Document was published.) |
| 04:12 | 9 | BY MR. MACURDY: |
| 04:12 | 10 | Q.  What's depicted in 307.32, Special Agent? |
| 04:12 | 11 | A.  It's the master bedroom. |
| 04:12 | 12 | Q.  And what floor is this on? |
| 04:12 | 13 | A.  It's on the second floor. |
| 04:12 | 14 | Q.  Exhibit 307.33. |
| 04:13 | 15 | THE COURT:  Any objection to .33? |
| 04:13 | 16 | MR. LISBOA:  No, Judge. |
| 04:13 | 17 | THE COURT:  It's received in evidence, may be |
| 04:13 | 18 | displayed. |
| 04:13 | 19 | (GOVERNMENT EXHIBIT 307.33 WAS RECEIVED IN EVIDENCE.) |
| 04:13 | 20 | (Document was published.) |
| 04:13 | 21 | BY MR. MACURDY: |
| 04:13 | 22 | Q.  What's depicted in 307.33? |
| 04:13 | 23 | A.  It's another angle of the second-floor master bedroom |
| 04:13 | 24 | where you can see the closet and the master bathroom. |
| 04:13 | 25 | Q.  Exhibit 307.34. |

| | | |
|---|---|---|
| 04:13 | 1 | THE COURT:  Any objection? |
| 04:13 | 2 | MR. LISBOA:  None. |
| 04:13 | 3 | THE COURT:  307.34 is received in evidence.  You may |
| 04:13 | 4 | display that. |
| 04:13 | 5 | (GOVERNMENT EXHIBIT 307.34 WAS RECEIVED IN EVIDENCE.) |
| 04:13 | 6 | (Document was published.) |
| 04:13 | 7 | BY MR. MACURDY: |
| 04:13 | 8 | Q.  What's in 307.34? |
| 04:13 | 9 | A.  That's the bed located in the master bedroom on the |
| 04:13 | 10 | second floor. |
| 04:13 | 11 | Q.  I'm circling the top of the furniture at the right of |
| 04:13 | 12 | 307.34.  Do you see that circling? |
| 04:13 | 13 | A.  Yes. |
| 04:14 | 14 | Q.  Now, what was recovered from the top of that dresser |
| 04:14 | 15 | cabinet? |
| 04:14 | 16 | A.  From the top, there was a blue bin containing documents, |
| 04:14 | 17 | a blue plastic bin containing documents. |
| 04:14 | 18 | MR. MACURDY:  Exhibit 307.35, Ms. Reed. |
| 04:14 | 19 | THE COURT:  Any objection? |
| 04:14 | 20 | MR. LISBOA:  No. |
| 04:14 | 21 | THE COURT:  307.35 is received in evidence.  You may |
| 04:14 | 22 | display it. |
| 04:14 | 23 | (GOVERNMENT EXHIBIT 307.35 WAS RECEIVED IN EVIDENCE.) |
| 04:14 | 24 | (Document was published.) |
| 04:14 | 25 | BY MR. MACURDY: |

*United States District Court*
*District of New Jersey*

| | | |
|---|---|---|
| 04:14 | 1 | Q.  What's in 307.35? |
| 04:14 | 2 | A.  That's another angle of the master bedroom where you |
| 04:14 | 3 | could see the dresser, mirror, and a bureau and the blue |
| 04:14 | 4 | plastic bin on the top. |
| 04:14 | 5 | Q.  Now, in this master bedroom in the course of the |
| 04:14 | 6 | investigation, were any of Mary's clothing recovered in this |
| 04:14 | 7 | bedroom? |
| 04:14 | 8 | MR. LISBOA:  Objection as to foundation. |
| 04:14 | 9 | THE COURT:  Overruled. |
| 04:15 | 10 | THE WITNESS:  No. |
| 04:15 | 11 | MR. MACURDY:  Exhibit 307.36, Ms. Reed. |
| 04:15 | 12 | THE COURT:  Any objection? |
| 04:15 | 13 | MR. LISBOA:  No objection to the picture, but |
| 04:15 | 14 | objection as to any hearsay elicited as to the contents. |
| 04:15 | 15 | THE COURT:  It's received in evidence.  You may |
| 04:15 | 16 | display it, 307.36. |
| 04:15 | 17 | (GOVERNMENT EXHIBIT 307.36 WAS RECEIVED IN EVIDENCE.) |
| 04:15 | 18 | (Document was published. |
| 04:15 | 19 | BY MR. MACURDY: |
| 04:15 | 20 | Q.  What's in 307.37, Special Agent? |
| 04:15 | 21 | A.  That's the closet located in the master bedroom on the |
| 04:15 | 22 | second floor. |
| 04:15 | 23 | MR. MACURDY:  Ms. Reed, 307.38. |
| 04:15 | 24 | THE COURT:  Any objection to .38? |
| 04:15 | 25 | MR. LISBOA:  No. |

| | | |
|---|---|---|
| 04:15 | 1 | THE COURT:  It's received in evidence.  You may |
| 04:15 | 2 | display that. |
| 04:15 | 3 | (GOVERNMENT EXHIBIT 307.38 WAS RECEIVED IN EVIDENCE.) |
| 04:16 | 4 | (Document was published.) |
| 04:16 | 5 | BY MR. MACURDY: |
| 04:16 | 6 | Q.  What's depicted in 307.38, Special Agent Benwell? |
| 04:16 | 7 | A.  That's taken from the bathroom located in the master |
| 04:16 | 8 | bedroom on the second floor. |
| 04:16 | 9 | MR. MACURDY:  Exhibit 307.39, Ms. Reed. |
| 04:16 | 10 | THE COURT:  Any objection? |
| 04:16 | 11 | MR. LISBOA:  No, Judge. |
| 04:16 | 12 | THE COURT:  307.39 is received in evidence, may be |
| 04:16 | 13 | displayed. |
| 04:16 | 14 | (GOVERNMENT EXHIBIT 307.39 WAS RECEIVED IN EVIDENCE.) |
| 04:16 | 15 | (Document was published.) |
| 04:16 | 16 | BY MR. MACURDY: |
| 04:16 | 17 | Q.  What's in 307.39? |
| 04:16 | 18 | A.  That's the shower bath located in the master bedroom on |
| 04:16 | 19 | the second floor. |
| 04:17 | 20 | MR. MACURDY:  Go back to 307.38 for a second, |
| 04:17 | 21 | Ms. Reed. |
| 04:17 | 22 | Can you zoom in on the sink area of that photo? |
| 04:17 | 23 | BY MR. MACURDY: |
| 04:17 | 24 | Q.  How many toothbrushes do you see in that photograph in |
| 04:17 | 25 | 307.38, Special Agent? |

| | | |
|---|---|---|
| 04:17 | 1 | A.   There is one toothbrush. |
| 04:17 | 2 | MR. MACURDY:  Ms. Reed, if you could pull up 307.54. |
| 04:17 | 3 | THE COURT:  Any objection? |
| 04:17 | 4 | MR. LISBOA:  No. |
| 04:17 | 5 | THE COURT:  Received in evidence, may be displayed. |
| 04:17 | 6 | (GOVERNMENT EXHIBIT 307.54 WAS RECEIVED IN EVIDENCE.) |
| 04:17 | 7 | (Document was published.) |
| 04:17 | 8 | BY MR. MACURDY: |
| 04:17 | 9 | Q.   Now, what furniture are we looking at in 307.54? |
| 04:17 | 10 | A.   That's the tall bedroom cabinet, which would have been to |
| 04:18 | 11 | the left of the dresser and mirror, and that's at the very top |
| 04:18 | 12 | of the piece of furniture. |
| 04:18 | 13 | Q.   Okay.  Do you remember when we looked at photographs that |
| 04:18 | 14 | had the blue bin at the top of a dresser? |
| 04:18 | 15 | A.   Yes. |
| 04:18 | 16 | Q.   Where is that in relation to this photograph? |
| 04:18 | 17 | A.   The blue bin has been removed. |
| 04:18 | 18 | Q.   Okay.  So where was it before it was removed? |
| 04:18 | 19 | A.   The blue bin was on top of these documents. |
| 04:18 | 20 | Q.   Okay.  And where were these documents in relation to the |
| 04:18 | 21 | blue bin before anything was removed? |
| 04:18 | 22 | A.   They were located underneath the blue bin. |
| 04:18 | 23 | MR. MACURDY:  Okay.  307.55, Ms. Reed. |
| 04:18 | 24 | THE COURT:  Any objection? |
| 04:18 | 25 | MR. LISBOA:  No, Judge. |

04:18    1            THE COURT:  307.55 is in evidence, may be displayed.

04:19    2    (GOVERNMENT EXHIBIT 307.55 WAS RECEIVED IN EVIDENCE.)

04:19    3            (Document was published.)

04:19    4    BY MR. MACURDY:

04:19    5    Q.   Now, do you see these documents in 307.55 --

04:19    6    A.   Yes.

04:19    7    Q.   -- Special Agent?

04:19    8         And where -- were -- these documents, they appear to be

04:19    9    on a bed.  Were they found on this bed?

04:19   10    A.   No, they were found on top of the cabinet in the master

04:19   11    bedroom.

04:19   12    Q.   Okay.  Are these the documents that we just saw on the

04:19   13    top in 307.54?

04:19   14    A.   Yes, they are.

04:19   15    Q.   And is that the blue bin that we have been talking about?

04:19   16    A.   Yes, that's the blue plastic bin.

04:19   17    Q.   That's in the top right corner of 307.55 in this exhibit?

04:19   18    A.   That's correct.

04:19   19            MR. MACURDY:  Ms. Reed, if you could, take us back to

04:19   20    307.54 for a second.

04:19   21    BY MR. MACURDY:

04:20   22    Q.   Special Agent, I'm going to show you what's been marked

04:20   23    for identification as Government Exhibit 109.

04:20   24         Special Agent, I'm handing you what's been marked for

04:20   25    identification Government Exhibit 109.  Do you recognize that?

| | | |
|---|---|---|
| 04:20 | 1 | A.  Yes. |
| 04:21 | 2 | Q.  And how do you recognize it? |
| 04:21 | 3 | A.  They are the documents that were seen in the previous |
| 04:21 | 4 | photo, and that were recovered on top -- or recovered on top |
| 04:21 | 5 | of the dresser in the master bedroom. |
| 04:21 | 6 | Q.  Okay.  And are those the documents depicted in 307.54? |
| 04:21 | 7 | A.  Yes, they are. |
| 04:21 | 8 | Q.  And in preparation for your testimony today, did you |
| 04:21 | 9 | review the contents of Exhibit 109? |
| 04:21 | 10 | A.  Yes, I did. |
| 04:21 | 11 | Q.  And were they in the same or substantially similar |
| 04:21 | 12 | condition as when they were recovered from the top of the |
| 04:21 | 13 | dresser on September 18th? |
| 04:21 | 14 | A.  Yes, they are. |
| 04:21 | 15 | Q.  Now, were copies made of documents in Exhibit 109? |
| 04:21 | 16 | A.  Yes, copies were made. |
| 04:21 | 17 | MR. MACURDY:  I'm not going to seek to admit that |
| 04:21 | 18 | exhibit.  I'm going to show Agent Benwell some other exhibits. |
| 04:21 | 19 | I'm going to show him some other related exhibits. |
| 04:21 | 20 | Ms. Reed, you can show him Exhibit 103. |
| 04:21 | 21 | THE COURT:  Any objection to 103? |
| 04:22 | 22 | MR. LISBOA:  No, Judge. |
| 04:22 | 23 | THE COURT:  It's received.  May be displayed.  103. |
| 04:22 | 24 | (GOVERNMENT EXHIBIT 103 WAS RECEIVED IN EVIDENCE.) |
| 04:22 | 25 | (Document was published.) |

04:22   1   BY MR. MACURDY:

04:22   2   Q.   Special Agent, do you recognize this document?

04:22   3   A.   Yes.

04:22   4   Q.   Now, what is it, the title at the top?

04:22   5   A.   It's a Certificate of Marriage in the State of New

04:22   6   Jersey.

04:22   7   Q.   Where was this recovered?

04:22   8   A.   This was recovered on top of the tall cabinet in the

04:22   9   master bedroom.

04:22   10  Q.   And is this one of the documents in that Exhibit 109 we

04:22   11  just discussed?

04:22   12  A.   Yes, it is.

04:22   13  Q.   And who was this a Certificate of Marriage between?

04:22   14  A.   Would you like me to spell it out?

04:22   15  Q.   Sure.  That's best for the court reporter, sure.

04:23   16  A.   Okay.  It's A-L-I-A I. F-A-L-E-H, A-L-H-U-N-A-I-T-Y.

04:23   17  That was the name of Spouse A.  Spouse B is

04:23   18  S-A-K-U-N-T-H-A-L-A, T-H-A-L-A-H-I-T-I-Y-A,

04:23   19  V-I-T-H-A-N-A-L-A-G-E.

04:23   20  Q.   What is the date and place of that marriage certificate?

04:23   21  A.   The date of marriage is April 11th, 2018.  And the place

04:23   22  of marriage is Secaucus, Hudson County.

04:23   23  Q.   Now, you mentioned to us that this was recovered at the

04:23   24  top of the dresser in the master bedroom.  Were any

04:24   25  photographs recovered in that same set of paperwork?

04:24   1   A.   Yes.   There were additional photographs that were

04:24   2   recovered.

04:24   3          MR. MACURDY:   Ms. Reed, if you could show him 105.1.

04:24   4          THE COURT:   Any objection to 105.1?

04:24   5          MR. LISBOA:   Judge, the objection I have is is this

04:24   6   105.1 contained in the evidence bag that's present on the

04:24   7   witness stand?

04:24   8          THE COURT:   Is it?

04:24   9          THE WITNESS:   Yes.

04:24   10          THE COURT:   It's in the bag.

04:24   11          MR. LISBOA:   So can I voir dire on the bag then, I

04:24   12   guess, and this photo.

04:24   13          THE COURT:   Can you voir dire on the bag?

04:24   14          MR. LISBOA:   Yes.

04:24   15          THE COURT:   The bag hasn't been moved into evidence.

04:24   16          MR. LISBOA:   I know that, but the contents are now

04:24   17   going to be moved, according to what the government is --

04:24   18          THE COURT:   Oh, I don't know.   This is being moved.

04:24   19   You can voir dire on this, that's for sure.

04:24   20          MR. LISBOA:   Right.   That's what's in that bag, the

04:24   21   original.

04:24   22          THE COURT:   It's apparently in that bag.

04:24   23          MR. LISBOA:   Right.

04:24   24          THE COURT:   Do you want to open the bag and look at

04:25   25   it?

VOIR DIRE - BENWELL - LISBOA

04:25   1          MR. LISBOA:  If I could just ask some questions.

04:25   2          THE COURT:  Sure.

04:25   3   (VOIR DIRE EXAMINATION OF BRADLEY JAMES BENWELL BY

04:25   4   MR. LISBOA:)

04:25   5   Q.  Agent, the item in front you, 105.1, that's contained in

04:25   6   that evidence bag --

04:25   7   A.  Yes.

04:25   8   Q.  -- that you have up there?

04:25   9          And when I say evidence bag, let me say for the record

04:25   10  what I'm asking you about.  That looks like it's Exhibit 109.

04:25   11  Is that right?

04:25   12  A.  Yes.

04:25   13  Q.  Okay.  And this is a plastic bag; is that right?

04:25   14  A.  Correct.

04:25   15  Q.  And this is an evidence bag; is that right?

04:25   16  A.  Yes.

04:25   17  Q.  So this is used, for example, if you recover anything

04:25   18  which you think is important for your investigation; is that

04:25   19  right?

04:25   20  A.  Yes.

04:25   21  Q.  Okay.  And on here it says "Homeland Security;" is that

04:25   22  right?

04:25   23  A.  Yes.

04:25   24  Q.  "U.S. Immigration Customs Enforcement"; is that right?

04:25   25  A.  Correct.

VOIR DIRE BENWELL - LISBOA                          171

04:25    1    Q.   "U.S. Customs and Border Protection."  Okay.  Do you see

04:25    2    that?

04:25    3    A.   Yes.

04:25    4    Q.   And then some fill-in-the-blank type lines; is that

04:25    5    right?

04:25    6    A.   Yes.

04:25    7    Q.   It has an F and P and F number; is that right?

04:25    8    A.   Yes.

04:25    9    Q.   And you filled that number out?

04:25    10   A.   Yes.

04:25    11   Q.   And this is your handwriting?  Did you fill this out?

04:26    12   A.   I can't tell if that's my handwriting.  If it was

04:26    13   originally placed in an evidence bag -- oftentimes when we

04:26    14   seize evidence, I will put it in an evidence bag and then the

04:26    15   case agent will make photocopies of it.

04:26    16   Q.   Gotcha.

04:26    17   A.   It will be rebagged into a different evidence bag.

04:26    18   Q.   Okay.  But to your recollection, you recovered this

04:26    19   particular item, whatever the contents are?

04:26    20   A.   Yes.

04:26    21   Q.   Okay.  So with regard to the handwriting here, so if I

04:26    22   would ask you, there is a blank here for date and time of

04:26    23   seizure.  Do you see that?

04:26    24   A.   Yes.

04:26    25   Q.   Okay.  You don't recognize that handwriting; is that

04:26  1   right?

04:26  2   A.   I can't be sure if that's my handwriting or not.

04:26  3   Q.   Do you know whose handwriting that is?

04:26  4   A.   No, I don't.

04:26  5   Q.   Do you know who has handled this since you handled it?

04:26  6   A.   I don't know, but we keep a chain of custody that would

04:26  7   have the names of everyone that's taken possession of the

04:26  8   evidence.

04:26  9   Q.   But right now, you can't testify as to who might have

04:26  10  opened this or --

04:27  11  A.   Not without seeing the chain of custody.

04:27  12  Q.   Okay.  Do you have that with you?

04:27  13  A.   I don't have that.

04:27  14  Q.   Did you write a report in this case, by the way?

04:27  15  A.   I -- I wrote an incident report, but I don't believe that

04:27  16  I wrote a report of investigation.

04:27  17  Q.   How about notes?

04:27  18  A.   No, I don't recall writing any notes.

04:27  19       MR. LISBOA:  Okay.  Judge, objection is as to chain

04:27  20  and authenticity.

04:27  21       THE COURT:  Well, he says that he had recovered this

04:27  22  picture from the top of the dresser, and that's sufficient to

04:27  23  get it to let the jury decide.  So your objection is

04:27  24  overruled.  103 may be -- 105.1 may be exhibited to the jury.

04:27  25  (GOVERNMENT EXHIBIT 105.1 WAS RECEIVED IN EVIDENCE.)

| | | |
|---|---|---|
| 04:27 | 1 | (Document was published.) |
| 04:27 | 2 | (DIRECT EXAMINATION OF BRADLEY JAMES BENWELL BY MR. MACURDY:) |
| 04:28 | 3 | Q.  Let's be clear, Special Agent Benwell, this 105.1, where |
| 04:28 | 4 | was -- this is a photocopy of a document; is that right? |
| 04:28 | 5 | A.  Yes. |
| 04:28 | 6 | Q.  The original was recovered where? |
| 04:28 | 7 | A.  It was recovered from the tall dresser cabinet located in |
| 04:28 | 8 | the master bedroom on the second floor. |
| 04:28 | 9 | Q.  Okay.  And where was it in relation to that marriage |
| 04:28 | 10 | certificate Exhibit 103 that we just looked at? |
| 04:28 | 11 | A.  It was commingled with the marriage certificate. |
| 04:28 | 12 | Q.  Do you recognize anyone in this photograph, 105.1? |
| 04:28 | 13 | A.  Yes. |
| 04:28 | 14 | Q.  Who do you recognize? |
| 04:28 | 15 | A.  I recognize the defendant and I recognize Mary. |
| 04:28 | 16 | Q.  And can you just point out where Mary is? |
| 04:28 | 17 | A.  She's the person on the far right with the red shirt. |
| 04:28 | 18 |         MR. MACURDY:  Ms. Reed, could you please bring up |
| 04:28 | 19 | 105.2? |
| 04:28 | 20 |         THE COURT:  Any objection? |
| 04:29 | 21 |         MR. LISBOA:  Same.  They're in the same bag, Judge. |
| 04:29 | 22 |         THE COURT:  I don't know.  Are they in the same bag? |
| 04:29 | 23 | They're from the same bag? |
| 04:29 | 24 |         THE WITNESS:  Yes. |
| 04:29 | 25 |         THE COURT:  Found in the same place? |

04:29    1              THE WITNESS:  Yes, sir.

04:29    2              THE COURT:  Overruled.

04:29    3         You may show that to the jury.  It's admitted.

04:29    4    (GOVERNMENT EXHIBIT 105.2 WAS RECEIVED IN EVIDENCE.)

04:29    5              (Document was published.)

04:29    6    BY MR. MACURDY:

04:29    7    Q.   Special Agent, 105.2, is that another copy of a document?

04:29    8    A.   Yes.

04:29    9    Q.   And where was the original copy -- the original version

04:29    10   of 105.2 found?

04:29    11   A.   From the tall cabinet located in the master bedroom.

04:29    12   Q.   Do you recognize anyone in 105.2?

04:29    13   A.   I recognize Mary.

04:29    14   Q.   And where is she located in this photograph?

04:29    15   A.   She is located in the center of the photo.  She's

04:29    16   standing up, wearing a dark-colored shirt.

04:29    17              MR. MACURDY:  Ms. Reed, could you pull up 105.3.

04:30    18              THE COURT:  Any objection?

04:30    19              MR. LISBOA:  Same as before, Judge.

04:30    20              THE COURT:  Is this in the same location?

04:30    21              THE WITNESS:  Yes, your Honor.

04:30    22              THE COURT:  It's in the bag?  Original is in the bag?

04:30    23              THE WITNESS:  Yes.

04:30    24              THE COURT:  Overruled.  105.3 is admitted, may be

04:30    25   displayed.

| 04:30 | 1 | (GOVERNMENT EXHIBIT 105.3 WAS RECEIVED IN EVIDENCE.) |

04:30   1   (GOVERNMENT EXHIBIT 105.3 WAS RECEIVED IN EVIDENCE.)

04:30   2           (Document was published.)

04:30   3   BY MR. MACURDY:

04:30   4   Q.   105.3, Special Agent, is this, again, a copy of a

04:30   5   photograph?

04:30   6   A.   Yes, it is.

04:30   7   Q.   Where was the original photograph recovered from?

04:30   8   A.   On top of the tall dresser in the master -- in the master

04:30   9   bedroom.

04:30   10  Q.   And do you recognize any of the people in 105.3?

04:30   11  A.   Yes.

04:30   12  Q.   Who do you recognize?

04:30   13  A.   Mary is on the right side of the photograph.

04:30   14          MR. MACURDY:  105.4, Ms. Reed, if you could pull that

04:30   15  up.

04:30   16          THE COURT:  Any objection?

04:30   17          THE DEPUTY CLERK:  Same as before, Judge.

04:31   18          THE COURT:  Is this from the same location?

04:31   19          THE WITNESS:  Yes.

04:31   20          THE COURT:  Original is in the bag?

04:31   21          THE WITNESS:  Yes.

04:31   22          THE COURT:  Overruled.  105.4 may be admitted and

04:31   23  displayed.

04:31   24  (GOVERNMENT EXHIBIT 105.4 WAS RECEIVED IN EVIDENCE.)

04:31   25          (Document was published.)

04:31    1    BY MR. MACURDY:

04:31    2    Q.   Special Agent, is this again a copy, 105.4 a copy of a

04:31    3    photograph?

04:31    4    A.   Yes, it is.

04:31    5    Q.   And where was the original found?

04:31    6    A.   It was located on top of the tall dresser in the master

04:31    7    bedroom.

04:31    8    Q.   And do you recognize anyone in this photograph?

04:31    9    A.   Yes.  I recognize the defendant and I recognize Mary.

04:31   10    Q.   Now, these four copies, copies of photographs I just

04:31   11    showed you 105.1, .2, .3, .4, where were they recovered in

04:31   12    relation to that marriage certificate?

04:31   13    A.   They were all together.

04:31   14    Q.   I would like to show you Exhibit 104.

04:32   15          THE COURT:  Any objection to 104?

04:32   16          MR. LISBOA:  No, Judge, unless the agent is offering

04:32   17    a translation of any foreign language.

04:32   18          THE COURT:  That would be quite some trick.

04:32   19          104 is received in evidence, may be displayed.

04:32   20    (GOVERNMENT EXHIBIT 104 WAS RECEIVED IN EVIDENCE.)

04:32   21          (Document was published.)

04:32   22    BY MR. MACURDY:

04:32   23    Q.   Special Agent, do you recognize this document --

04:32   24    A.   Yes.

04:32   25    Q.   -- Exhibit 104?  Is this, again, a copy?

BENWELL - DIRECT - MACURDY

| | | |
|---|---|---|
| 04:32 | 1 | A.   Yes.  It's a copy of the original document. |
| 04:32 | 2 | Q.   Where was the original document recovered from? |
| 04:32 | 3 | A.   From the top of the tall dresser in the master bedroom. |
| 04:32 | 4 | Q.   And is the original of this document located in that |
| 04:32 | 5 | Exhibit 109 bag that we looked at? |
| 04:33 | 6 | A.   Yes, it is. |
| 04:33 | 7 | Q.   And this document, up at the top, do you see the English |
| 04:33 | 8 | words at the top?  What is the title of that document? |
| 04:33 | 9 | A.   It says, Application for Birth Certificate and for -- |
| 04:33 | 10 | and/or Search of Registers. |
| 04:33 | 11 | Q.   Would please spell the name in lines 1 and 2? |
| 04:33 | 12 | A.   It's S-A-K-U-N-T-H-A-L-A hyphen R-A-T-N-A-P-U-R-A, on |
| 04:33 | 13 | line one.  Line two is T-H-A-L-A-H-I-T-I-Y-A |
| 04:33 | 14 | V-I-T-H-A-N-A-L-A-G-A. |
| 04:33 | 15 | Q.   Thank you, Special Agent Benwell. |
| 04:34 | 16 |      MR. MACURDY:  Ms. Reed, you can take down Exhibit 104 |
| 04:34 | 17 | now. |
| 04:34 | 18 | BY MR. MACURDY: |
| 04:34 | 19 | Q.   Now, Special Agent, back at the time of the defendant's |
| 04:34 | 20 | arrest on September 18th, 2018, was she in possession of a |
| 04:34 | 21 | cellular phone? |
| 04:34 | 22 | A.   Yes, she was. |
| 04:34 | 23 | Q.   And was that phone seized by law enforcement at the time |
| 04:34 | 24 | of her arrest? |
| 04:34 | 25 | A.   It was. |

| | | |
|---|---|---|
| 04:34 | 1 | MR. MACURDY:  If I can approach with a couple |
| 04:34 | 2 | different exhibits -- showing counsel, Exhibit 202 for |
| 04:34 | 3 | identification, Exhibit 200 for identification, and then |
| 04:34 | 4 | Exhibit 200.1 and 200.2. |
| 04:35 | 5 | BY MR. MACURDY: |
| 04:35 | 6 | Q.   Special Agent, if you could start with Exhibit 200.  Do |
| 04:35 | 7 | you recognize that?  I'm sorry.  200.2.  I'm sorry. |
| 04:35 | 8 | A.   202? |
| 04:35 | 9 | Q.   202. |
| 04:35 | 10 | A.   Yes, I recognize it. |
| 04:35 | 11 | Q.   And what is that? |
| 04:35 | 12 | A.   It's a -- it's a cellular phone, it's an iPhone that was |
| 04:35 | 13 | seized from the defendant at the time of her arrest. |
| 04:35 | 14 | Q.   Have you looked back at that cellular phone in |
| 04:35 | 15 | preparation for your testimony today? |
| 04:35 | 16 | A.   Yes, I have. |
| 04:35 | 17 | Q.   And is it in the same or substantially similar condition |
| 04:35 | 18 | as when it was recovered -- |
| 04:36 | 19 | A.   Yes. |
| 04:36 | 20 | Q.   -- from the defendant? |
| 04:36 | 21 | Were the contents of that cell phone extracted? |
| 04:36 | 22 | A.   Yes, they were. |
| 04:36 | 23 | Q.   And was a report generated from that cell phone |
| 04:36 | 24 | extraction? |
| 04:36 | 25 | A.   Yes, it was. |

| | | |
|---|---|---|
| 04:36 | 1 | Q.   Can you -- are you familiar with cell phone extractions |
| 04:36 | 2 | at the general level in the course of your work for Homeland |
| 04:36 | 3 | Security? |
| 04:36 | 4 | A.   Yes, yes. |
| 04:36 | 5 | Q.   Could you explain to the jury, what is a cell phone |
| 04:36 | 6 | extraction? |
| 04:36 | 7 | A.   Law enforcement has specific software that allows it to |
| 04:36 | 8 | extract data from cellular phones and mobile devices, and in |
| 04:36 | 9 | addition to extracting the data, it also parses and organizes |
| 04:36 | 10 | the data to make it easier for law enforcement to view and |
| 04:36 | 11 | analyze. |
| 04:36 | 12 | Q.   Now, I also have an Exhibit 202.1 in front of you.  Do |
| 04:36 | 13 | you see that? |
| 04:36 | 14 | A.   Yes. |
| 04:36 | 15 | Q.   And what is that? |
| 04:36 | 16 | A.   That's a -- a flash drive. |
| 04:37 | 17 | Q.   And in the course of preparing for your testimony today, |
| 04:37 | 18 | have you reviewed the contents of that flash drive? |
| 04:37 | 19 | A.   Yes, I have. |
| 04:37 | 20 | Q.   And what does that flash drive contain with reference to |
| 04:37 | 21 | Exhibit 202? |
| 04:37 | 22 | A.   It's the extraction data, extraction report, from the |
| 04:37 | 23 | defendant's cell phone. |
| 04:37 | 24 | Q.   Okay.  And looking at the extraction report, does it tell |
| 04:37 | 25 | you the cell phone number of the cell phone? |

04:37    1    A.    Yes, it does.

04:37    2    Q.    Okay.  And you are familiar with the cell phone number of

04:37    3    the cell phone?

04:37    4    A.    Yes.

04:37    5    Q.    And, Special Agent, do you have the cell phone number

04:38    6    memorized?

04:38    7    A.    No, I don't.

04:38    8    Q.    Okay.  But looking back at Exhibit 202, is there anything

04:38    9    that refreshes your recollection of the phone number?

04:38    10   A.    Yes.

04:38    11   Q.    And what's the phone number on the defendant's phone?

04:38    12   A.    It's 862 --

04:38    13   Q.    Give me one second.  862?

04:38    14   A.    262.

04:38    15   Q.    262.

04:38    16   A.    3677.

04:38    17   Q.    3677.

04:38    18        All right.  Now, are you able to, from the extraction

04:38    19   report, in 202.1 for identification, are you able to get text

04:38    20   messages from that extraction report?

04:38    21   A.    Yes.

04:38    22   Q.    And did you review certain text messages from the

04:38    23   extraction report in 202.1?

04:38    24   A.    Yes, I did.

04:39    25        MR. MACURDY:  Ms. Reed, could you pull up 202.1A?

| | | |
|---|---|---|
| 04:39 | 1 | Your Honor, I'm not seeking to admit 202 or 202.1. |
| 04:39 | 2 | THE COURT:  Well, this is 1A.  Are you seeking to |
| 04:39 | 3 | admit this? |
| 04:39 | 4 | MR. MACURDY:  I will seek to admit this. |
| 04:39 | 5 | THE COURT:  All right.  Counsel, any objection? |
| 04:39 | 6 | MR. LISBOA:  What's the contents of the actual |
| 04:39 | 7 | physical exhibit? |
| 04:39 | 8 | THE COURT:  I don't know what you mean by contents. |
| 04:39 | 9 | MR. LISBOA:  Well, the phone is not being moved? |
| 04:39 | 10 | MR. MACURDY:  I wasn't planning on it.  I can. |
| 04:39 | 11 | THE COURT:  I don't know what you mean by contents. |
| 04:39 | 12 | MR. LISBOA:  Could we go to sidebar, Judge? |
| 04:39 | 13 | THE COURT:  Sure. |
| 04:39 | 14 | MR. LISBOA:  Sorry. |
| 04:39 | 15 | THE COURT:  That's all right. |
| 04:39 | 16 | (Sidebar) |
| 04:39 | 17 | THE COURT:  Let me in on the secret.  What is this? |
| 04:40 | 18 | What's on the screen? |
| 04:40 | 19 | MR. MACURDY:  These are text messages from |
| 04:40 | 20 | defendant's phone. |
| 04:40 | 21 | MR. LISBOA:  I'm not telling you what to do, but |
| 04:40 | 22 | don't you have to move the phone in? |
| 04:40 | 23 | MR. MACURDY:  I don't think that's necessary.  I |
| 04:40 | 24 | could, but it's just he's identified it, just said it.  We had |
| 04:40 | 25 | a pretrial on it, on the cell phone extractions being |

| | | |
|---|---|---|
| 04:40 | 1 | authentic and he can say this is text messages that I viewed |
| 04:40 | 2 | from the extraction. |
| 04:40 | 3 | MR. LISBOA:  Can the voir dire -- can I voir dire as |
| 04:40 | 4 | to the actual evidence? |
| 04:40 | 5 | THE COURT:  He is not moving it into evidence. |
| 04:40 | 6 | MR. LISBOA:  Well, the derivative part of it is being |
| 04:40 | 7 | moved in, so I think I should at least be entitled to voir |
| 04:40 | 8 | dire on the actual object. |
| 04:40 | 9 | THE COURT:  You want to voir dire -- you want to voir |
| 04:40 | 10 | dire on the document that's being -- |
| 04:40 | 11 | MR. LISBOA:  The phone. |
| 04:40 | 12 | THE COURT:  What's it got to do with the document? |
| 04:40 | 13 | MR. LISBOA:  Because the document comes from the |
| 04:40 | 14 | phone.  It's extracted from it. |
| 04:40 | 15 | THE COURT:  That's what he says. |
| 04:40 | 16 | MR. LISBOA:  Right.  So I want a brief voir dire on |
| 04:40 | 17 | the phone.  That's it. |
| 04:40 | 18 | THE COURT:  You want to ask him about the extraction? |
| 04:40 | 19 | MR. LISBOA:  The extraction of the actual phone. |
| 04:41 | 20 | THE COURT:  Okay. |
| 04:41 | 21 | MR. LISBOA:  All right.  Thanks, Judge. |
| 04:41 | 22 | (Open Court) |
| 04:41 | 23 | THE COURT:  Counsel, go ahead. |
| 04:41 | 24 | MR. LISBOA:  Thank you, Judge. |
| 04:41 | 25 | (VOIR DIRE EXAMINATION OF BRADLEY JAMES BENWELL BY |

                            proceeding - VOIR DIRE

04:41    1   MR. LISBOA:)

04:41    2   Q.   Agent, let me ask you to take a look at the two phones

04:41    3   that you have up here.  First, I will show you what's been

04:41    4   marked by the government as 202.  Do you see that?

04:41    5   A.   Yes.

04:41    6   Q.   And this appears to be -- looks like a red iPhone?

04:41    7   A.   Yes.

04:41    8   Q.   Okay.  And this is the phone that you are claiming comes

04:41    9   from Ms. al Hunaity; is that right?

04:41   10   A.   That's correct.

04:41   11   Q.   When was the first time that you met Ms. al Hunaity?

04:41   12   A.   I've never met her.

04:41   13   Q.   Okay.  So with regard to this phone, do you know who

04:42   14   obtained this phone?

04:42   15   A.   It would say the seizing officers --

04:42   16   Q.   Take a look.

04:42   17   A.   -- Special Agent Conyers.

04:42   18   Q.   Okay.  Do you know if it was given to Agent Conyers or

04:42   19   how he obtained this item?

04:42   20   A.   That was seized incident to her arrest.

04:42   21   Q.   Okay.  And that's -- somebody told you; is that right?

04:42   22   A.   Yes.

04:42   23   Q.   So you never met Ms. al Hunaity; is that right?

04:42   24   A.   I don't believe so.

04:42   25   Q.   So you didn't arrest her?  You didn't seize this item?

| | | |
|---|---|---|
| 04:42 | 1 | A.   No, I did not. |
| 04:42 | 2 | Q.   How about the extraction from it? |
| 04:42 | 3 | A.   I -- I'm not a forensic agent, so I didn't perform the |
| 04:42 | 4 | extraction myself. |
| 04:42 | 5 | Q.   Okay.  Did you have anything to do with the extraction, |
| 04:42 | 6 | meaning did you submit the actual phone to whoever does the |
| 04:42 | 7 | extractions? |
| 04:42 | 8 | A.   No. |
| 04:42 | 9 | Q.   Okay.  When did you first see the extractions of the |
| 04:42 | 10 | phone? |
| 04:42 | 11 | A.   I would say within the last two weeks. |
| 04:43 | 12 | Q.   Okay.  And I show you 200 for identification.  Okay? |
| 04:43 | 13 | With regard to 200, this is purported to be Mary's phone; is |
| 04:43 | 14 | that right? |
| 04:43 | 15 | A.   That's correct. |
| 04:43 | 16 | Q.   And this -- |
| 04:43 | 17 | MR. MACURDY:  Your Honor, there's been no mention of |
| 04:43 | 18 | that. |
| 04:43 | 19 | THE COURT:  There has been no testimony. |
| 04:43 | 20 | MR. LISBOA:  No testimony?  All right.  Judge, the |
| 04:43 | 21 | objection is as to authentication -- |
| 04:43 | 22 | THE COURT:  I understand. |
| 04:43 | 23 | MR. LISBOA:  -- chain.  Thank you, Judge. |
| 04:43 | 24 | THE COURT:  I will sustain the objection.  This is |
| 04:43 | 25 | the wrong witness to tie this phone to the defendant. |

| | | |
|---|---|---|
| 04:43 | 1 | MR. MACURDY:  Can I be heard at sidebar, your Honor? |
| 04:43 | 2 | THE COURT:  Sure. |
| 04:43 | 3 | (Sidebar) |
| 04:43 | 4 | MR. MACURDY:  Your Honor, can I admit it |
| 04:44 | 5 | conditionally?  Another agent who was present for the recovery |
| 04:44 | 6 | of the phone will testify later in the trial. |
| 04:44 | 7 | THE COURT:  Why can't that person testify as to the |
| 04:44 | 8 | seizing this phone from this defendant? |
| 04:44 | 9 | MR. MACURDY:  She will testify about that. |
| 04:44 | 10 | THE COURT:  What's the purpose then of the upcoming |
| 04:44 | 11 | testimony?  Where are we going with this? |
| 04:44 | 12 | MR. MACURDY:  So this agent reviewed the extractions |
| 04:44 | 13 | from the phone. |
| 04:44 | 14 | THE COURT:  That's all you want him to testify about? |
| 04:44 | 15 | MR. MACURDY:  Correct. |
| 04:44 | 16 | THE COURT:  Subject to being tied up later? |
| 04:44 | 17 | MR. MACURDY:  Yes. |
| 04:44 | 18 | THE COURT:  I understand now.  It's conditional. |
| 04:44 | 19 | Okay.  I understand your objection.  But if he can |
| 04:44 | 20 | conditionally tie this phone to her, then I'm going to permit |
| 04:44 | 21 | this guy to testify about the extraction, given the |
| 04:44 | 22 | certification and all that stuff we have.  If it doesn't, then |
| 04:44 | 23 | I'll hear from you and we will strike his testimony.  Okay? |
| 04:44 | 24 | MR. LISBOA:  Thank you, Judge. |
| 04:44 | 25 | (Open Court) |

BENWELL - DIRECT - MACURDY

04:45    1          THE COURT:  All right.  You may proceed with this

04:45    2    testimony at this time.

04:45    3          MR. MACURDY:  Thank you, your Honor.

04:45    4    (DIRECT EXAMINATION OF BRADLEY JAMES BENWELL BY MR. MACURDY:)

04:45    5    Q.   Government Exhibit 202.1A, do you have that in front of

04:45    6    you, Special Agent?

04:45    7    A.   Yes.

04:45    8    Q.   And what is this document?

04:45    9    A.   It's a page from the extraction report.

04:45   10          THE COURT:  Any objection to this going into

04:45   11    evidence?  Subject to your other --

04:45   12          MR. LISBOA:  Subject to the Court's ruling, Judge,

04:45   13    no.

04:45   14          THE COURT:  All right.  It may be received in

04:45   15    evidence and may be displayed, 202.1A.

04:45   16    (GOVERNMENT EXHIBIT 202.1A WAS RECEIVED IN EVIDENCE.)

04:45   17          (Document was published.)

04:45   18          MR. MACURDY:  Ms. Reed, could we enlarge the top

04:45   19    half of the document?

04:45   20          Yes, that's good.

04:45   21    BY MR. MACURDY:

04:46   22    Q.   All right.  Now, what is this document, Special Agent,

04:46   23    202.1A?

04:46   24    A.   It's a page from the extraction report showing text

04:46   25    messages.

| 04:46 | 1 | Q.   Okay.  And it's the extraction report from what cellular |
| 04:46 | 2 | phone? |
| 04:46 | 3 | A.   From the defendant's iPhone. |
| 04:46 | 4 | Q.   And who are the participants in this particular exchange? |
| 04:46 | 5 | A.   It's the defendant and another individual with the name |
| 04:46 | 6 | Jenifer Landlord. |
| 04:46 | 7 | Q.   And where is that name coming from, from within the |
| 04:46 | 8 | phone? |
| 04:46 | 9 | A.   That's coming from her contact list. |
| 04:46 | 10 | Q.   Okay.  And what's the last four of the phone that this |
| 04:46 | 11 | comes from again? |
| 04:46 | 12 | A.   3677. |
| 04:46 | 13 | MR. MACURDY:  Ms. Reed, could you show the contents |
| 04:46 | 14 | of those messages? |
| 04:46 | 15 | BY MR. MACURDY: |
| 04:47 | 16 | Q.   Special Agent, could you read those text messages? |
| 04:47 | 17 | I guess my first question is:  Which phone number are |
| 04:47 | 18 | these messages coming from? |
| 04:47 | 19 | A.   They're coming from 862-262-3677. |
| 04:47 | 20 | Q.   Okay.  Could you read those messages? |
| 04:47 | 21 | A.   "Hi, Jennifer, I hope you are well.  The lady downstairs |
| 04:47 | 22 | keeps complaining against us.  She always bothers my kids and |
| 04:47 | 23 | go to management to complain.  She came to harass me once and |
| 04:47 | 24 | threatened me that I am only renting and she owns her house." |
| 04:47 | 25 | The next message:  "My son ride a bike and he leave it |

BENWELL - DIRECT - MACURDY                    188

04:47    1    in my parking sometimes when he comes for dinner.  Then we

04:47    2    store it.  She complain against him."

04:47    3         The next line:  "She complain against us cleaning

04:47    4    during the day and open the door and close it and I think she

04:47    5    is racist."

04:47    6         And the final line:  "Also my mail was opened many

04:48    7    times and my nanny saw her sniffing in my mail."

04:48    8    Q.  Special Agent Benwell, what date is on these text

04:48    9    messages that come from the iPhone marked Exhibit 200 -- 202?

04:48    10   I'm sorry.

04:48    11   A.  They are all September 15th, 2018.

04:48    12        MR. MACURDY:  Ms. Reed, could you pull up in evidence

04:48    13   the exhibit that we looked at, Exhibit 103?

04:48    14   BY MR. MACURDY:

04:48    15   Q.  This is the Certificate of Marriage that we looked at in

04:48    16   Exhibit 103 --

04:48    17   A.  Yes.

04:48    18   Q.  -- Special Agent Benwell?

04:48    19        And what's the date on that certificate of marriage?

04:48    20   A.  The date is April 11th, 2018.

04:48    21   Q.  And now, I also have in front of you up there

04:48    22   Exhibit 200.  Do you see that exhibit bag?

04:48    23        You can take that exhibit off the screen.

04:49    24   A.  Yes.

04:49    25   Q.  And what's in that exhibit bag?

04:49   1   A.   This is a black cell phone that was owned by Mary.

04:49   2   Q.   Now, did you recover the cell phone from Mary?

04:49   3   A.   No, I didn't.

04:49   4   Q.   Okay.  Are you familiar with it in the course of your

04:49   5   involvement in this case?

04:49   6   A.   Yes.

04:49   7   Q.   Was an extraction done of this cell phone, Exhibit 200?

04:49   8   A.   Yes, it was.

04:49   9   Q.   And was a report again generated?

04:49   10  A.   Yes, a report was generated.

04:49   11  Q.   You have in front of you what's marked as Exhibit 200.1.

04:49   12  Do you see that?

04:49   13  A.   Yes.

04:49   14  Q.   Do you have it in your hand?

04:49   15  A.   Yes.

04:49   16  Q.   Again, what is Exhibit 200.1?

04:49   17  A.   It's a flash drive containing extraction reports.

04:49   18  Q.   Okay.  Is it the same flash drive we talked about a

04:50   19  couple minutes ago?

04:50   20  A.   Yes.

04:50   21  Q.   Does it contain multiple extractions on it?

04:50   22  A.   Yes, it does.

04:50   23  Q.   Have you reviewed that extraction report?

04:50   24  A.   I have.

04:50   25  Q.   Is there various data from Mary's cell phone available on

| | | |
|---|---|---|
| 04:50 | 1 | that extraction report? |
| 04:50 | 2 | A.   Yes. |
| 04:50 | 3 | Q.   Does that include the phone's contacts? |
| 04:50 | 4 | A.   Yes. |
| 04:50 | 5 |        MR. MACURDY:  Ms. Reed, if you could pull up |
| 04:50 | 6 | Exhibit 200.1A. |
| 04:50 | 7 |        THE COURT:  Any objection to this? |
| 04:50 | 8 |        MR. LISBOA:  Voir dire, please. |
| 04:50 | 9 |        THE COURT:  Voir dire? |
| 04:50 | 10 |        MR. LISBOA:  Yes. |
| 04:50 | 11 |        THE COURT:  Okay. |
| 04:50 | 12 | (VOIR DIRE EXAMINATION OF BRADLEY JAMES BENWELL BY |
| 04:50 | 13 | MR. LISBOA:) |
| 04:50 | 14 | Q.   Agent, with regard to -- I guess that's 200?  200.  The |
| 04:50 | 15 | phone. |
| 04:50 | 16 | A.   The phone is 200. |
| 04:50 | 17 | Q.   Okay.  Where did you recover this phone from? |
| 04:50 | 18 | A.   This was recovered from Mary. |
| 04:50 | 19 | Q.   Did she give it to you? |
| 04:50 | 20 | A.   She didn't give it to me.  I did not recover the phone. |
| 04:50 | 21 | Q.   So when you say it was -- do you know who recovered it |
| 04:50 | 22 | from Mary? |
| 04:51 | 23 | A.   The seizing officers are Special Agent Vasquez and |
| 04:51 | 24 | Special Agent Conyers. |
| 04:51 | 25 | Q.   Okay.  So with regard to this particular phone, did you |

BENWELL - VOIR DIRE

| | | |
|---|---|---|
| 04:51 | 1 | do the extraction? |
| 04:51 | 2 | A.   I didn't physically perform the extraction. |
| 04:51 | 3 | Q.   Do you know who did the extraction? |
| 04:51 | 4 | A.   Yes. |
| 04:51 | 5 | Q.   Who did the extraction? |
| 04:51 | 6 | A.   That would be Intelligence Research Specialist Grippe. |
| 04:51 | 7 | Q.   Okay.  And with regard to the extraction of this phone, |
| 04:51 | 8 | Government Exhibit 200, when did you first review that |
| 04:51 | 9 | extraction? |
| 04:51 | 10 | A.   I would say within the last two weeks. |
| 04:51 | 11 | Q.   Okay.  But, again, you had no dealings with the analysis |
| 04:51 | 12 | or creating of any reports or the data that the government is |
| 04:51 | 13 | showing you on I guess 200.1A? |
| 04:51 | 14 | A.   That's correct. |
| 04:51 | 15 | Q.   So, basically, you're here to read in off of that report; |
| 04:51 | 16 | is that right? |
| 04:51 | 17 | A.   That's correct. |
| 04:51 | 18 | MR. LISBOA:  Okay.  Same objection? |
| 04:52 | 19 | THE COURT:  Same ruling, it's conditionally admitted. |
| 04:52 | 20 | You may display 200.1A as it is conditionally admitted into |
| 04:52 | 21 | evidence. |
| 04:52 | 22 | (GOVERNMENT EXHIBIT 200.1A WAS RECEIVED IN EVIDENCE.) |
| 04:52 | 23 | (Document was published.) |
| 04:52 | 24 | (CONTINUED DIRECT EXAMINATION OF BRADLEY JAMES BENWELL BY |
| 04:52 | 25 | MACURDY:) |

04:52    1    Q.  Before we do that, Special Agent, did you review the

04:52    2    phone number associated with Mary's phone, Exhibit 200?

04:52    3    A.  Yes.

04:52    4    Q.  Was it shown up on the extraction report, 200.1?  That's

04:52    5    not in front of you, the extraction report, 200.1.

04:52    6    A.  Yes.

04:52    7    Q.  Do you remember that phone number off the top of your

04:52    8    head?

04:52    9    A.  I don't remember it off the top of my head.

04:52    10    Q.  Looking at Exhibit 200, is there anything that refreshes

04:52    11    your recollection of that phone number?

04:52    12    A.  Yes.

04:52    13    Q.  Give me one second, I'll ask you to read it off.

04:52    14        All right.  Go ahead.

04:52    15    A.  It's 862-276-8600.

04:53    16    Q.  Thank you.

04:53    17        Now, we have in front of us Exhibit 200.1A.  What is

04:53    18    that?

04:53    19    A.  It's a list of -- of contacts that was taken from Mary's

04:53    20    phone.

04:53    21        MR. MACURDY:  Ms. Reed, if you could show on the

04:53    22    bottom of that, the page number.

04:53    23    BY MR. MACURDY:

04:53    24    Q.  And how many pages is this document?

04:53    25    A.  It's three pages.

04:53   1   Q.   How many contacts are listed on this document, 200.1A?

04:53   2   A.   51 contacts.

04:53   3            MR. MACURDY:  Actually, can we zoom in on the contact

04:53   4   number, Ms. Reed, at the top?

04:54   5            THE WITNESS: I stand corrected.  It's 61 contacts.

04:54   6   BY MR. MACURDY:

04:54   7   Q.   Is there a contact for Alia on here?

04:54   8   A.   Yes, there is.

04:54   9            MR. MACURDY:  Ms. Reed, could you enlarge Line 11?

04:54   10  BY MR. MACURDY:

04:54   11  Q.   What's Line 11 of this Exhibit 200.1A?

04:54   12  A.   It's a contact for Alia.

04:54   13  Q.   What's phone number?

04:54   14  A.   The phone number is 1-862-262-3677.

04:54   15           MR. MACURDY:  Ms. Reed, could you pull up Exhibit

04:54   16  200.1B.

04:55   17           THE COURT:  Any objection to this?

04:55   18           MR. LISBOA:  Judge, same objection.

04:55   19           THE COURT:  All right.  It's conditionally admitted

04:55   20  into evidence.  You may display 200.1B.

04:55   21  (GOVERNMENT EXHIBIT 200.1B WAS RECEIVED IN EVIDENCE.)

04:55   22            (Document was published.)

04:55   23  BY MR. MACURDY:

04:55   24  Q.   Do you recognize 200.1B, Special Agent?

04:55   25  A.   Yes, I do.

04:55   1   Q.   And what is it?

04:55   2   A.   It's a page from the extraction report of Mary's phone,

04:55   3   and details text messages between her and Alia.

04:55   4   Q.   And approximately how many, if you can see on there, how

04:55   5   many text messages are in the conversation?

04:55   6   A.   It appears to be 427.

04:55   7   Q.   And have you reviewed this document in preparation for

04:55   8   your testimony?

04:55   9   A.   Yes, I have.

04:55   10  Q.   And approximately what time period are the majority of

04:55   11  these text messages covering here?

04:55   12  A.   They would be from, say, the fall of 2017 up to the time

04:56   13  of the search warrant, which was September 18th of 2018.

04:56   14          MR. MACURDY:  Ms. Reed, could you pull up Page 3 of

04:56   15  200.1B, Lines 37 to 44?

04:56   16  BY MR. MACURDY:

04:56   17  Q.   Special Agent Benwell, could you read Lines 37 to 44?

04:56   18          Start with Line 37.  Who is sending that message?

04:56   19  A.   It's from Alia, 862-262-3677.

04:56   20  Q.   What's the date?

04:56   21  A.   The date is April 6th, 2017.

04:56   22  Q.   And what's the content of that message?

04:56   23  A.   It says:  "No."

04:56   24  Q.   What's the next message in the chain?

04:57   25  A.   The next message is also from Alia, 862 ---

| 04:57 | 1 | Q. You don't have to read the number. |
| 04:57 | 2 | A. Okay. The next message is: "Not this." |
| 04:57 | 3 | Q. And the next message? |
| 04:57 | 4 | A. Is also from Alia, it says: "The other one too." |
| 04:57 | 5 | Q. The next message? |
| 04:57 | 6 | A. The same, from Alia: "The label." |
| 04:57 | 7 | Q. And the next message, who is that one from? |
| 04:57 | 8 | A. That one is from Mary to Alia. |
| 04:57 | 9 | Q. What's the content of that? |
| 04:57 | 10 | A. "This one." |
| 04:57 | 11 | Q. What's the next message? |
| 04:57 | 12 | A. The next one is from Alia, it says: "I need the name." |
| 04:57 | 13 | Q. The next message? |
| 04:57 | 14 | A. Is from Alia. It says: "Make food for Feisal. He is |
| 04:57 | 15 | hungry." |
| 04:57 | 16 | Q. The next message? |
| 04:57 | 17 | A. Is from Alia. It says: "Hurry." |
| 04:57 | 18 |     MR. MACURDY: Ms. Reed, if you could pull up PDF |
| 04:57 | 19 | Page 6, Lines 89 to 91. |
| 04:57 | 20 | BY MR. MACURDY: |
| 04:57 | 21 | Q. The first message in that chain, who is that from? |
| 04:58 | 22 | A. It's from Mary to Alia. |
| 04:58 | 23 | Q. What's the date? |
| 04:58 | 24 | A. Is September 11th, 2017. |
| 04:58 | 25 | Q. And what's the content? |

| | | |
|---|---|---|
| 04:58 | 1 | A.   It says:  "Alia, coll the milk Feisal and solution and |
| 04:58 | 2 | another step." |
| 04:58 | 3 | Q.   Next message? |
| 04:58 | 4 | A.   Is to Alia.  It says Alia:  "Coll the milk Feisal." |
| 04:58 | 5 | Q.   And what's the third message? |
| 04:58 | 6 | A.   Is also to Alia.  It says:  "Okay." |
| 04:58 | 7 | Q.   And what's the first name of the defendant in the case? |
| 04:58 | 8 | A.   I'm sorry.  The last line was from Alia, not to Alia. |
| 04:58 | 9 | Q.   What's the first name of the defendant in this case? |
| 04:58 | 10 | A.   Alia. |
| 04:58 | 11 |        MR. MACURDY:  Ms. Reed, if you could pull up PDF 11, |
| 04:58 | 12 | Lines 179 to 180.  The exhibit number is 200.1B, Page PDF 11. |
| 04:58 | 13 | BY MR. MACURDY: |
| 04:59 | 14 | Q.   The first message, who is that from, Special Agent? |
| 04:59 | 15 | A.   It's from Alia. |
| 04:59 | 16 | Q.   What date? |
| 04:59 | 17 | A.   March 11th, 2018. |
| 04:59 | 18 | Q.   What's the content? |
| 04:59 | 19 | A.   "What is your boot size?" |
| 04:59 | 20 | Q.   What's the response? |
| 04:59 | 21 | A.   "Size 8." |
| 04:59 | 22 |        MR. MACURDY:  Ms. Reed, PDF 14, Lines 231 to 232. |
| 04:59 | 23 | BY MR. MACURDY: |
| 04:59 | 24 | Q.   Who's the first message from? |
| 04:59 | 25 | A.   It's from Alia. |

BERGER - DIRECT - MACURDY                    197

| | | |
|---|---|---|
| 04:59 | 1 | Q.   What date? |
| 04:59 | 2 | A.   May 1st, 2018. |
| 04:59 | 3 | Q.   What's the content? |
| 04:59 | 4 | A.   "Mary put salt on the shawarma and a little black |
| 04:59 | 5 | pepper." |
| 04:59 | 6 | Q.   What's the response? |
| 04:59 | 7 | A.   "Okay." |
| 04:59 | 8 |      MR. MACURDY:  Ms. Reed, could you do that same page, |
| 04:59 | 9 | Lines 238 to 241? |
| 04:59 | 10 | BY MR. MACURDY: |
| 04:59 | 11 | Q.   First message, who is that from? |
| 04:59 | 12 | A.   It is from Alia. |
| 04:59 | 13 | Q.   What date? |
| 04:59 | 14 | A.   The date is May 16th, 2018. |
| 05:00 | 15 | Q.   What's the content? |
| 05:00 | 16 | A.   "If you find Feisal phone, tell me." |
| 05:00 | 17 | Q.   What's the next message? |
| 05:00 | 18 | A.   Next message is to Alia:  "It is in the home." |
| 05:00 | 19 | Q.   What's the next message? |
| 05:00 | 20 | A.   From Alia.  "Don't make basmati rice, make white rice." |
| 05:00 | 21 |      And the final message is "okay." |
| 05:00 | 22 |      MR. MACURDY:  Ms. Reed, PDF 15, Lines 313 to 317. |
| 05:00 | 23 | BY MR. MACURDY: |
| 05:00 | 24 | Q.   First message, who is that from? |
| 05:00 | 25 | A.   It's from Alia. |

05:00   1   Q.   What date?

05:00   2   A.   The date is June 12th, 2018.

05:00   3   Q.   What's the content?

05:00   4   A.   "Mary, get a G tube kit."

05:00   5   Q.   What's the next message?

05:00   6   A.   The next message is from June 13th, 2018.

05:00   7   Q.   Content?

05:00   8   A.   It's from Alia.  It says:  "Don't make laban heavy."

05:01   9   Q.   Next message?

05:01   10  A.   Is from Alia.  And "make regular rice, not basmati."

05:01   11  Q.   Next message?

05:01   12  A.   "So I can feed Feisal."

05:01   13  Q.   Next message?

05:01   14  A.   "Okay."

05:01   15        MR. MACURDY:  Your Honor, I can keep going.  I don't

05:01   16  want to keep the jury though.

05:01   17        THE COURT:  It's 2:00.  Time to call it a day.

05:01   18        Ladies and gentlemen of the jury, thank you very

05:01   19  much.  That's the end of today.  We will see you at quarter to

05:01   20  9:00 tomorrow morning.  Once again, don't do any research and

05:01   21  don't talk about this case.  Have a great evening.

05:01   22        THE DEPUTY CLERK:  All rise.

05:01   23        (The Jury left the courtroom at 1:59 p.m.)

05:02   24        THE COURT:  Okay.  Anything else for the record?

05:02   25        MR. MACURDY:  We do have a stipulation.

BERNARD - DIRECT - MACURDY                    200

1            I/we certify that the foregoing is a correct

2    transcript from the record of proceedings in the

3    above-entitled matter.

4

5    /S/ Carl Nami, Official Court Reporter

6    /s/ Carol Farrell, Official Court Reporter

7
     Court Reporters/Transcribers
8

9    April 30, 2019
           Date
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*United States District Court*
*District of New Jersey*